THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WIESLAW KROTOSZYNSKI, Appellant. [840 NYS2d 627]—

Appeal by the defendant from a judgment of the Supreme Court, Queens County (Braun, J.), rendered March 9, 2005, convicting him of criminally negligent homicide and assault in the second degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is modified, on the law, by vacating the conviction of criminally negligent homicide and the sentence imposed thereon, and dismissing that count of the indictment; as so modified, the judgment is affirmed.

The defendant and his girlfriend, Elzbieta Bieda, shared an apartment in Queens for approximately 2½ years. On June 14, 2003, sometime in the late afternoon, the defendant and his friend, the decedent Walter Stelmach, got into an altercation inside the defendant's apartment after a night and subsequent day of heavy drinking, during which time they both became inebriated. The defendant was insisting that the decedent leave the apartment, but the decedent, who was having difficulty getting up from the couch, was unable to stand up and leave the apartment on his own. During a lull in their ensuing argument, Bieda, who was working on a crossword puzzle, asked the decedent for help with one of the words in the puzzle. After the decedent gave her the answer and she told him that he was correct, the defendant struck Bieda on the side of the head with a remote control for the television, then pushed her with a strong force causing her to fall onto a small night stand and to knock

over a flowerpot and telephone as she fell to the floor. The defendant screamed and cursed at Bieda and yelled at her, telling her to leave the room.

As Bieda ran from the room, the defendant began striking the decedent with his hands and the decedent subsequently fell to the floor. Bieda saw the defendant drag the decedent, by the leg, from the defendant's apartment into the hallway of the defendant's apartment building. The hallway floor and stairs were made of a hard, stone-like material. The apartment door closed behind them and Bieda did not see what happened in the hallway. Bieda testified that the defendant came back inside the apartment alone and sometime between 5:00 P.M. and 7:00 P.M., he left the apartment.

The decedent was found in the hallway by a neighbor who testified that he arrived at home sometime between 5:00 P.M. and 7:00 P.M. Shortly after he arrived at home, this neighbor heard a lot of noise in the hallway and when he looked through the peephole he saw the decedent lying face-up with his head a couple of inches from a staircase. The neighbor called the building's superintendent who called the 911 operator at approximately 7:13 P.M. The emergency medical technician (hereinafter the EMT) arrived at 7:16 P.M., and found the decedent lying on his back and bleeding from the right side of his head. The EMT did not observe blood anywhere on either the staircase leading up to the floor where the decedent was found or the staircase leading up to the roof above that floor.

The medical examiner (hereinafter the ME) concluded with a reasonable degree of medical certainty that the decedent's cause of death was blunt force trauma to the head. The ME acknowledged that blunt force was either being struck with something hard or hitting something hard. The ME also testified that the skull fractures sustained here were more extensive than simple skull fractures. Thus, the ME opined with a reasonable degree of medical certainty, that the skull fractures sustained by the decedent were caused by a greater force than that which would be the result of a punch to the head, and were inconsistent with a fall down stairs, or a fall to the ground from a prone, sitting, or standing position. The skull fractures, however, were consistent with a force such as a kick to the head.

"To be held criminally responsible for a homicide, a defendant's conduct must actually contribute to the victim's death by set[ting] in motion the events that result in the killing. Liability will attach even if the defendant's conduct is not the sole cause of death if the actions were a sufficiently direct cause of the ensuing death. More than an obscure or merely probable con-

nection between the conduct and result is required. Rather, an act qualifies as a sufficiently direct cause when the ultimate harm should have been reasonably foreseen" (*People v DaCosta*, 6 NY3d 181, 184 [2006] [internal quotation marks and citations omitted]; *see People v Matos*, 83 NY2d 509, 511 [1994]; *Matter of Anthony M.*, 63 NY2d 270, 280 [1984]; *People v Stewart*, 40 NY2d 692, 697 [1976]; *People v Kibbe*, 35 NY2d 407, 413 [1974]; *People v Brengard*, 265 NY 100, 108 [1934]).

We agree with the defendant that, viewing the evidence in the light most favorable to the prosecution (*see People v Contes*, 60 NY2d 620 [1983]), the evidence was legally insufficient to support his conviction of criminally negligent homicide. The evidence adduced by the People was legally insufficient to establish that any of the defendant's actions, such as striking the decedent with his hands, was an actual contributory cause of the decedent's death thereby giving rise to criminal liability therefor (*see Matter of Anthony M., supra*; *People v Stewart, supra*). Moreover, the evidence adduced by the People failed to establish that it was reasonably foreseeable that the defendant's conduct in dragging the decedent by his foot into the hallway over a hard stone-like floor would result in the decedent's death so as to "qualif[y] as a sufficiently direct cause" of the decedent's death (*People v Matos, supra* at 511; *see People v DaCosta, supra*). The other theories advanced by the People at trial regarding what might have occurred during a maximum two-hour period during which the decedent was in the hallway, including the People's theory that the defendant swung the decedent around while he was on the floor causing him to strike his head on the bottom step of the stairway leading up to the roof, were purely speculative.

However, viewing the evidence in the light most favorable to the prosecution (*see People v Contes, supra*), we conclude that the evidence was legally sufficient to support the defendant's conviction of assault in the second degree on Bieda. Contrary to the defendant's contention, the jury reasonably could have inferred the defendant's intent to cause physical injury based upon the evidence of his belligerent conduct towards Bieda after he struck her on the side of her head with the television's remote control (*see People v Davis*, 300 AD2d 78 [2002]; *People v DeWitt*, 130 AD2d 504 [1987]). In addition, as the People correctly argue, even an otherwise innocuous item such as a remote control can become a "dangerous instrument" depending on the manner in which it is used (Penal Law § 120.05 [2]; *see People v Carter*, 53 NY2d 113, 116 [1981]).

As to the question of physical injury, generally, the question of

whether such injury has been established is one for the trier of fact (*see People v Rojas*, 61 NY2d 726, 727-728 [1984]; *Matter of Philip A.*, 49 NY2d 198, 200 [1980]; *People v Coward*, 100 AD2d 628 [1984]). Bieda testified that as a result of being struck in the head with the remote control, she sustained a cut to her ear which caused bleeding and bruising on her face. Bieda also testified that as a result of her injuries, she experienced pain for two weeks. In addition, three days after the incident, two detectives investigating the crimes observed that Bieda had a cut on her ear and "very bad bruising." Thus, a rational trier of fact could have found that the complainant suffered "substantial pain" beyond a reasonable doubt (Penal Law § 10.00 [9]; *see* Penal Law § 120.05 [2]; *People v Chiddick*, 8 NY3d 445 [2007]; *People v Vasquez*, 297 AD2d 297, 298 [2002]; *People v Brown*, 243 AD2d 749, 749-750 [1997]; *People v Brooks*, 155 AD2d 680 [1989]; *People v Coward, supra*; *cf. Matter of Philip A., supra*; *People v Baez*, 13 AD3d 463, 464 [2004]).

The sentence imposed upon the defendant's conviction of assault in the second degree was not excessive (*see People v Suitte*, 90 AD2d 80 [1982]).

In light of our determination, the defendant's remaining contention has been rendered academic. Rivera, J.P., Goldstein, Skelos and Balkin, JJ., concur.