[1 NYS3d 777]

THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, v ANTHONY ESTAVEZ, Defendant.

Supreme Court, New York County, January 20, 2015

APPEARANCES OF COUNSEL

*Mark Jankowitz* for defendant.

*Cyrus R. Vance, Jr., District Attorney (Sara Sullivan* of counsel), for plaintiff.

## OPINION OF THE COURT

Daniel P. Conviser, J.

The defendant was convicted following a jury trial presided over by this court of one count of assault in the second degree and five counts of criminal possession of a forged instrument in the second degree. The trial evidence indicated that on the evening of December 27, 2013, a uniformed police officer, Arthur McCarthy, observed the defendant apparently attempt to sell tickets to a New York Knicks basketball game to a couple at the entrance to Madison Square Garden in New York County in violation of a statute prohibiting the sale of such tickets within 1,500 feet of the arena's entrance. When Officer McCarthy attempted to place the defendant under arrest for that crime, the defendant punched Officer McCarthy, a further confrontation ensued and the defendant was eventually subdued by Officer McCarthy and other police officers. A later search of the defendant at the precinct following his arrest revealed his possession of five fraudulent New York Knicks tickets. In addition to injuries suffered by Officer McCarthy during the altercation, the defendant was also injured during the fight. The defendant's injuries were more significant than those suffered by Officer McCarthy.

At the close of the People's case, the defendant moved for a trial order of dismissal with respect to all of the counts of the indictment. The court denied that motion with respect to the five counts of criminal possession of a forged instrument in the second degree but reserved decision on the charge of assault in the second degree to further consider the issue of whether the evidence presented at the trial was legally sufficient to allow the jury to find that the defendant caused "physical injury" to Officer McCarthy as required by the statute. The court now holds that such evidence was legally sufficient to find that physical injury was caused and denies the defendant's motion for a trial order of dismissal with respect to his conviction for assault in the second degree.

The court has also determined to defer the execution of the defendant's sentence, however, pending appeal. As outlined infra, the legal standards governing what constitutes "physical injury" in a close case like this one, in this court's view, are so uncertain that the Appellate Division could easily reach a different conclusion on the issue. For that reason, the court has determined to stay the execution of the defendant's sentence and allow the defendant to remain at liberty on bail pending appeal. If such an appeal "has not been brought to argument in or submitted to the intermediate appellate court" within 150 days this court will execute the judgment.[1] Otherwise, the court will execute the judgment upon a determination of the appeal by the Appellate Division.

## Statement of Facts

The evidence regarding Officer McCarthy's injuries came from his testimony, the testimony of a fellow officer, Sergeant Nieves, photographs of the injuries and a videotape taken from a security camera which captured the altercation. The defendant did not testify at the trial. Officer McCarthy testified that after confronting the defendant regarding his apparent attempt to unlawfully sell Knicks tickets, questioning him and conducting a quick frisk of his person, Officer McCarthy attempted to place the defendant under arrest. Upon grabbing the defendant's arm, Mr. Estavez punched Officer McCarthy "square"[2] in the cheek and Officer McCarthy's head snapped back. At that point, the defendant tried to get away. Mr. Estavez also grazed Officer McCarthy with a second punch. In later testimony during cross-examination summarizing the number of punches the defendant hit him with, Officer McCarthy testified that Mr. Estavez "swung a series of times striking me at least two and grazing me probably a couple other times before we hit the ground."[3]

Officer McCarthy testified that at this point, "[t]he struggle went onto the floor where he [the defendant] continued to kick

---

1. This quotation comes from CPL 460.50 (4) which authorizes this court to stay the execution of a judgment for 120 days following the issuance of such a stay order for a defendant who has "taken an appeal" to an intermediate appellate court. (CPL 460.50 [1].) The additional period of 30 days (for a total stay of 150 days) is provided to allow the defendant 30 days to file a notice of appeal. (CPL 460.10 [1] [a].) Obviously, any of these time limits could be modified by the Appellate Division.

2. Trial tr, Dec. 4, 2013 at 52, line 7.

3. *Id.* at 105, lines 11-13.

and punch, striking me in the rib cage and in the hand."[4] Officer McCarthy testified that the defendant kicked him a few times. As Officer McCarthy attempted to handcuff the defendant on the floor, Mr. Estavez resisted being handcuffed and turned on his side. Mr. Estavez kicked or punched the handcuffs out of Officer McCarthy's hands. As other officers rushed to aid him, Officer McCarthy, now on top of Mr. Estavez, attempted to hold the defendant down with Officer McCarthy's right hand as he was punching Mr. Estavez with his left hand. Mr. Estavez attempted to block Officer McCarthy's punches with one hand and punch Officer McCarthy with the other hand.

Another officer pepper-sprayed the defendant, Officer McCarthy struck Mr. Estavez with a baton and handcuffs were eventually placed on him. During the altercation, Mr. Estavez continued kicking and landed kicks on Officer McCarthy's rib cage. Officer McCarthy felt pain in his rib cage immediately after the incident. During the altercation and immediately after being handcuffed the defendant repeatedly yelled the word "freedom." After placing the defendant under arrest, Officer McCarthy felt pain in his face, rib cage and hand, was out of breath and physically tired. Officer McCarthy described a scene on the videotape immediately after the defendant's arrest as showing Officer McCarthy bent over and holding his rib cage.

Photos showing swelling of Officer McCarthy's whole left cheek area under his left eye and bruises on three knuckles of his left hand taken after the incident were received in evidence. Officer McCarthy at one point described the bruises to his knuckles as "scrapes."[5] Officer McCarthy testified that he had a larger bruise under his knuckles and that the bottom part of his left hand swelled up a lot but that he did not take a picture of that swelling. He said that his left hand was his dominant one. Officer McCarthy said his entire left cheek was "very swollen"[6] after the altercation. The swelling of his cheek, the pain in his face and the injury to his hand lasted approximately one week. Swelling to his rib cage lasted a few days. At the precinct he was treated by EMS personnel by receiving an ice pack, told that his hand would continue to swell but was not broken and refused to go to the hospital

---

**4.** *Id.* at 52, lines 13-14.

**5.** *Id.* at 110, lines 4-5.

**6.** *Id.* at 80, line 7.

because, he testified, he was "stubborn."[7] He did not leave work early on the night of the altercation. Sergeant Nieves testified that on the evening of the assault, he saw that Officer McCarthy "had redness to his face and his hand and he kept complaining of his rib pain."[8]

Describing his condition during his work processing the arrest on the evening of the incident, Officer McCarthy testified that

> "It was very difficult to type. I still had pain in my face and in my head and I wasn't able to work as quickly as I normally could so I needed the assistance of a couple of officers to assist me with the paperwork . . . I held an ice pack on my rib cage and a little bit to my face and I continued that when I got home that night."[9]

Officer McCarthy testified that he did not take pain-killers because he did not believe in that and in the following days treated his injuries only with ice and rest. He acknowledged, however, that he had taken aspirin in the past and taken pain-killers at a hospital when he had previously broken his hand at the insistence of hospital staff, although he said he had initially refused to take those pain-killers. He did not receive any additional medical treatment or miss any work. He said that a vest he usually wore strapped tight to his chest and rib cage had to be worn more loosely for one week because of his rib pain. The soreness in his rib cage, he testified, would have resulted in shortness of breath if his vest was really tight. Pain in the face lasted for a couple of days and pain in the rib cage and hand lasted for at least one week.

When asked on cross-examination "how much pain were you in realistically," Officer McCarthy responded: "I was in pain."[10] He testified that he was able to continue working on the night of the defendant's arrest with the assistance of other officers and that he and his fellow officers worked as a team. Officer McCarthy said he did not ever see a private doctor, did not have a scar and did not apply any bandage to his hand. He said that the injury to his hand "would have slowed me down

---

7.  *Id.* at 81, line 5.
8.  *Id.* at 198, lines 10-11.
9.  *Id.* at 90, lines 4-12.
10.  *Id.* at 122, lines 1-4.

for a day or two" if he had to reach for his gun.[11] Regarding his decision to not take any time off work, Officer McCarthy testified that "I enjoy going to work and I didn't want to miss any time."[12] He testified that his rib hurt when he coughed or sneezed for a week and that after one week all of his pain was gone.

## Conclusions of Law

"[A] verdict is legally sufficient if there is any valid line of reasoning and permissible inferences that could lead a rational person to conclude that every element of the charged crime has been proven beyond a reasonable doubt." (*People v Gordon*, 23 NY3d 643, 649 [2014].) In a legal sufficiency inquiry the evidence must be viewed in a light most favorable to the People crediting the People with all of the reasonable inferences the factfinder would be entitled to draw. (*Id.*) Assault in the second degree is committed when "[w]ith intent to prevent a . . . police officer . . . from performing a lawful duty . . . [a person] causes physical injury to such . . police officer." (Penal Law § 120.05 [3].)

The Penal Law defines "physical injury" as "impairment of physical condition or substantial pain." (Penal Law § 10.00 [9].) The Court of Appeals outlined some important general standards which further clarify the meaning of "substantial pain" in *People v Chiddick* (8 NY3d 445 [2007]), a case in which the evidence of the complainant's injuries was held to be legally sufficient to meet the substantial pain threshold. *Chiddick* involved an assault by a burglary suspect upon a building employee who, as occurred with Officer McCarthy, attempted to restrain the defendant.

The Court held that although the term "substantial pain" cannot be precisely defined, it is "more than slight or trivial pain." (8 NY3d at 447.) Pain need not, however, be "severe or intense" to be substantial. (*Id.*) The most important factor to consider in the analysis, the Court further explained, was the injury the defendant inflicted viewed objectively. In *Chiddick*, the defendant had bitten the complainant's finger, causing the fingernail to crack and the finger to bleed. The complainant was treated at a hospital where he received a bandage and a tetanus shot. The Court held that this injury "would normally

---

11. *Id.* at 123, lines 14-15.
12. *Id.* at 124, lines 4-5.

be expected to bring with it more than a little pain." (*Id.*) Sometimes, the Court held, the objective facts of an injury without any subjective description of pain will be enough to meet the "substantial pain" threshold. Thus, a jury may infer that pain is substantial, even if a victim never testifies to his degree of pain. (*People v Rojas*, 61 NY2d 726 [1984].)

In *Chiddick*, the victim also testified about his subjective experience of pain saying it was between "[a] little" and "a lot." (8 NY3d at 447.) Thus, the pain was not "trivial." (*Id.*) The fact that the complainant sought medical attention also indicated the pain was "significant." (*Id.*) Finally, the Court found, the revisors' notes to the enactment of the Penal Law indicated that the motive of a defendant may be relevant in the analysis since:

> "[P]etty slaps, shoves, kicks and the like delivered out of hostility, meanness and similar motives constitute only harassment and not assault, because they do not inflict physical injury. Motive is relevant because an offender more interested in displaying hostility than in inflicting pain will often not inflict much of it." (*Id.* at 448 [internal quotation marks and citations omitted], quoting *Matter of Philip A.*, 49 NY2d 198, 200 [1980].)

The Court went on to note that in *Chiddick*, the motive of the defendant (as, again was apparent in the instant case) was to make the complainant release him and thus "the whole point of the bite was to inflict as much pain as he could." (*Id.*) Indeed, the Court noted, it was unlikely anything other than the infliction of substantial pain would have caused the complainant, "evidently a tenacious man," to release him. (*Id.*)

The notion that a defendant's motive in inflicting an injury should be a significant consideration in determining the degree to which an injury exists, in this court's view, is a curious one. The vast majority of crimes in the Penal Law, of course, require proof of some culpable mental state on the defendant's part. But crimes in which the causing of physical injury is an element, like that here, also separately require that a defendant's culpable mental state (here, the intent to prevent a police officer from performing a lawful duty) be proved. A defendant's culpable mental state in causing an injury, however, obviously doesn't necessarily speak to the extent to which an injury was actually caused.

To draw an analogy, a person who intentionally kills someone will be guilty of murder, while a person who kills another

accidentally may be guilty of no crime at all. No one would suggest, however, that the question of whether a victim was actually dead should be assessed by looking to an offender's motive because an offender not interested in killing someone is unlikely to do so. The use of motive in assessing whether physical injury actually exists, in this court's view, is a reflection of the difficulty under current law of assessing whether the physical injury threshold has been satisfied. It adds a rough probability analysis of whether physical injury was likely (by assessing an offender's motive) to what is known about whether an injury actually occurred to reach an ultimate conclusion on a standard which lacks any precise definition.

In *Philip A.*, the Court of Appeals said that pain was a subjective matter and that "touching the skin of a person who has suffered third degree burns will cause exquisite pain, while the forceful striking of a gymnast in the solar plexus may cause him no discomfort at all." (49 NY2d at 200.) As the Court later held in *Chiddick*, however, the *Philip A.* court also held that the definition of "substantial pain" was not an entirely subjective issue and that there was an objective standard below which evidence of substantial pain would be insufficient. In *Philip A.*, a juvenile delinquency proceeding, evidence indicated the defendant hit the complainant twice in the face causing him to cry, that the complainant felt like bumps were forming on his face although none did, that his face developed red marks and that the complainant felt pain. These facts were held insufficient to meet the substantial pain threshold. The Court noted that although the complainant testified about his pain, the degree of his pain was not "spelled out." (*Id.*)

The term "substantial pain" does not connote that pain last for any particular period of time but case law, as outlined in more detail infra, has often appeared to consider the duration of pain to be a significant factor in the analysis. In *People v Feliciano* (156 AD2d 258, 259-260 [1st Dept 1989], *lv denied* 75 NY2d 868 [1990]) legal insufficiency was found in large part because although the complainant testified that his injury "really hurt," the evidence concerned pain only at the time of the crime's commission without evidence of "aftereffects."

In contrast to the general guidance the Court of Appeals has provided regarding the definition of "substantial pain" that Court has not provided any general rules for what "impairment of physical condition" means, other than the proviso that the term does not require a victim's "incapacitation." (*People v*

*Tejeda*, 78 NY2d 936, 938 [1991].) *Tejeda* was a brief memorandum decision in which an impairment of physical condition was apparently found because the victim had a facial scar from his injury which still existed four months after an assault. In *People v Hodge* (83 AD3d 594, 595 [1st Dept 2011], *lv denied* 17 NY3d 859 [2011]) the Court approved a jury instruction that "impairment of physical condition" does not require "serious and protracted impairment."

The literal definition of the word "impairment," like the term "substantial pain," would not seem to require any minimum time duration nor that an impairment be substantial.[13] Indeed, the First Department decision which was affirmed by the Court of Appeals in *Tejeda* held that "no particular degree of physical impairment is required" to constitute physical injury so long as the injury rises above the "petty slaps, shoves, kicks" and the like outlined by the Court of Appeals in *Philip A.* (*People v Tejeda*, 165 AD2d 683, 684 [1st Dept 1990].) Many appellate cases on the other hand, as discussed infra, have imposed a requirement that an "impairment of physical condition" rise above some minimal floor. Precisely what that minimum standard is has never been clear.

There is also little uniformity in close cases as to whether any of these requisite standards have been met. Determinations as to whether physical injury has been caused, of course, necessarily depend on the unique facts of each case. But it is difficult, in this court's view, to discern unifying principles applicable to cases like this. Moreover, as difficult as finding such principles might be for courts, they are likely immeasurably more difficult for many juries. This court was recently confronted with a question from a jury in another case, for example, as to whether an "impairment of physical condition" required that such an impairment last for any particular period of time and if so, what such a time period might be. In practice, in this court's view, the Court of Appeals and the First Department have also set a lower threshold for physical injury legal sufficiency determinations than has been applied in numerous appellate decisions from other departments, although this court is not aware that any court has previously recognized any such distinction.

---

**13.** See e.g. the definition of the word "impair" as "to damage or make worse by or as if by diminishing in some material respect." (Merriam-Webster Online Dictionary [http://www.merriam-webster.com/dictionary/impair].)

There are a number of important facts in this case which argue that the defendant did not cause physical injury. Officer McCarthy never testified to the degree of his pain, even when explicitly asked to do so. He did not miss a single moment of work. He suffered no lasting injuries or scars. His pain ceased after one week. He received no medical treatment other than his own administration of ice. With respect to his own subjective experience of his pain, his apparent good health, relative youth, physical abilities as manifested in the crime scene videotape, refusal to receive medical treatment and refusal to miss work likely made him much closer to the *Philip A.* paradigm of the gymnast struck in the solar plexus (who would likely experience little pain) than the third degree burn victim who would suffer substantial pain simply by being touched.

The only arguable impairment of Officer McCarthy's physical functioning occurred on the evening of his assault when he testified that he had difficulty typing. Even that impairment, however, did not prevent him from performing that task. The lacerations to his knuckles were superficial and the swelling of his face and rib cage completely abated within a week. No expert evidence or medical records were introduced to further explain or document his injuries. There are numerous examples of appellate cases where similar or more egregious facts have resulted in insufficiency findings.

Defendant cites *People v Foster* (162 AD2d 703 [2d Dept 1990], *lv denied* 76 NY2d 856 [1990]) for example. In *Foster*, the defendant struck his teeth into a police officer's nose. In contrast to the instant case, the officer received medical treatment including a tetanus shot and penicillin. Again, in contrast to the instant case, the officer testified that his pain was more than minor. The injury hampered the officer's work. His nose was lacerated and there was some bleeding. But the Court found it significant that there was no lasting scar and that stitches were not required (as was true here). Under these circumstances, the Court found that neither substantial pain nor impairment of physical condition occurred.

In *People v Baez* (13 AD3d 463, 464 [2d Dept 2004], *lv denied* 4 NY3d 851 [2005]) physical injury evidence was insufficient because the complainant "cleaned and bandaged the injury himself and testified to only limited restrictions." Here, of course, there was no evidence Officer McCarthy cleaned or bandaged any injury and any restrictions on his work were likewise minimal. The *Baez* court also found it significant that

"[n]o expert testimony was proffered as to either the extent of the injury or the duration of the limitation." (*Id.*) The same was true in this case. Indeed, here there were not even medical records to document Officer McCarthy's injuries.

In *People v Windbush* (163 AD2d 591, 592 [2d Dept 1990], *lv denied* 76 NY2d 945 [1990]) the complainant robbery victim was assaulted by a defendant and codefendants who punched him in the head and ribs, grabbed his arm and attempted without success to remove a ring from his finger. The complainant's mouth was bleeding, his ribs bothered him and he testified that he could not lift his arm for four or five days. Finding the evidence of physical injury to be legally insufficient, the Court focused on the fact that the complainant did not seek medical attention (as in the instant case), did not miss school (as was true with respect to work in the instant case) and that his inability to lift his arm was not "further explained." An inability to lift one's arm would seem to be a significantly greater impairment of physical condition than what occurred here and in contrast to the instant case in which Officer McCarthy initially confronted the defendant alone, the *Windbush* complainant was apparently attacked by at least three people.

An even more extreme contrast to the instant matter in a case where legal insufficiency was found occurred in *People v Lunetta* (38 AD3d 1303, 1304 [4th Dept 2007], *lv denied* 8 NY3d 987 [2007]). There, the victim testified that during a robbery she sustained bruising on her arm, swelling of two fingers on her left hand and a bump on her head. With respect to her arm, she testified that it was sore, bruised, painful and black and blue for about a week. She said her fingers were painful and that she was unable to move them for about two weeks. The victim said she could not pursue normal activities with her left hand in the days following the robbery because of the swelling in her hand. The Court found the victim's testimony that she could not move her swollen hands for about two weeks legally insufficient because the injury was again "not further explained" and inadequate to show the manner in which the victim's activities were curtailed. On its face, however, evidence that the victim could not move her fingers for two weeks far exceeded the degree of physical impairment Officer McCarthy testified to here. As in this case, the *Lunetta* court also found it significant that the victim did not testify about the degree of her pain.

In contrast to the defendant's punches and kicks in this case, the victim in *People v Brown* (187 AD2d 872 [3d Dept 1992], *lv*

*denied* 81 NY2d 785 [1993]) testified that he had been struck several times in the head and neck with a handgun. In contrast to the complainant here, the victim in *Brown* was taken to the hospital in an ambulance. The Court found this evidence insufficient because the victim said he had suffered only small cuts and abrasions which (as in this case) did not require stitches. In contrast to the instant case in which Officer McCarthy testified that his pain abated in one week and that he did not miss any work, the victim in *People v Young* (99 AD3d 739 [2d Dept 2012], *lv denied* 20 NY3d 1015 [2013]) testified that the general pain and soreness to her neck, arms, legs and feet intensified after she returned to work a week after an assault. In contrast to Officer McCarthy here, the victim in *Young* took Tylenol for her pain. This evidence was likewise held legally insufficient. The evidence presented by the robbery victim in *People v Briggs* (285 AD2d 651 [2d Dept 2001], *lv denied* 97 NY2d 751 [2002]) was insufficient because the complainant did not seek medical treatment (as is true here), treated injuries with only ice, Tylenol and iodine (evidencing greater medical treatment than here) and stayed home from work for only three to four days (as opposed to the absence of missed work here).

On the other hand, particularly in the First Department, there are numerous cases in which the limited facts provided in decisions argue that the evidence in the instant case was sufficient. (*See Matter of Veronica R.*, 268 AD2d 287 [1st Dept 2000] [swollen neck, scratches and pain limiting mobility for five to seven days sufficient]; *People v James*, 303 AD2d 240, 241 [1st Dept 2003], *lv denied* 100 NY2d 539 [2003] [sore left shoulder and hip lasting a week along with "considerable and prolonged" soreness, swelling and stiffness on the side of face, neck and jaw from being punched sufficient]; *People v Harvey*, 309 AD2d 713 [1st Dept 2003], *lv denied* 1 NY3d 573 [2003] [painful swelling and bruising for three days treated with ice packs sufficient].)

The First Department upheld a physical injury finding as legally sufficient in a 3-2 decision in *Matter of Winston W.* (29 AD3d 473 [1st Dept 2006]). In that case, the majority opinion noted that the complainant had been punched in the face and other parts of the body, kicked and bitten. He was treated at an emergency room where he was given antibiotics and Motrin for a headache which continued the following day. Justice McGuire's dissenting opinion noted that the presentment agency had claimed only that the dispositional hearing evidence was

legally sufficient to establish "substantial pain" (rather than an impairment of physical condition). He recounted that the complainant sustained contusions, a cut-lip, a scratch and a small bite on the back. He pointed out, however, that the complainant's headache had lasted only until the following day, that he did not testify to the degree of his pain and that emergency room records recounting the degree of that pain on a scale of 1 to 10 (with 10 being the worst possible pain) indicated his pain was "0."

In *People v Pope* (174 AD2d 319 [1st Dept 1991], *lv denied* 78 NY2d 1079 [1991]) evidence of physical injury suffered by a robbery victim was found sufficient even though the only significant injury he suffered occurred to his left pinky finger. The evidence indicated that the day following the robbery, his pinky was "very, very" sore and throbbing, that he could move it only painfully and that he "probably" took an aspirin (*id.* at 321). The victim wore a homemade splint on the pinky for about a week which made the injury "comfortable" (*id.*). His arm and hand were also scraped and bruised. The complainant did not miss any work because he was on vacation and did not seek medical treatment. In *People v Richards* (128 AD2d 387, 388 [1st Dept 1987], *lv denied* 70 NY2d 654 [1987]), the Court held that "[n]o particular degree of impairment of physical condition or substantial pain . . . is required to prove physical injury" (internal quotation marks omitted), citing *Philip A*. In that case, grand jury evidence that the attempted rape victim had her head slammed into the sides of an elevator causing "pain and subsequent swelling" was held legally sufficient (*id.* at 387).

The Court of Appeals in *People v Guidice* (83 NY2d 630 [1994]) held that while the absence of medical treatment is a factor in determining whether physical injury has been caused, a jury can consider whether a victim's subjective ability to withstand pain resulted in a decision to forgo medical care. In *Guidice*, evidence that the victim lost sensation in his arm, that his arm was discolored and that he suffered substantial pain to the arm after being hit with a baseball bat was sufficient to constitute physical injury although the victim did not seek medical treatment. The fact that a victim does not seek or receive medical treatment is not dispositive with respect to whether that victim suffered physical injury. (*Matter of Dominick V.*, 223 AD2d 453 [1st Dept 1996].)

In this court's view, the jurisprudence of the Court of Appeals and the holdings of the First Department indicate that

the evidence of physical injury was sufficient in this case both with respect to substantial pain and impairment of physical condition. First, in contrast to cases where courts have found legally insufficient evidence of physical injury in part because of the lack of evidence, there was evidence of physical injury from multiple sources in this case, including the testimony of Officer McCarthy, the testimony of Sergeant Nieves, photographs of Officer McCarthy's injuries and the videotape of the altercation. With respect to his lack of medical treatment, it was obvious that Officer McCarthy was a stoic person, who because of what he described as his own stubbornness, eschewed medical treatment for injuries which many other people might treat with medical attention or medication. Like the victim in *Guidice*, the jury was entitled to consider that inclination both with respect to the lack of medical treatment and with respect to Officer McCarthy's decision to not be absent from a job he testified he enjoyed and did not want to miss.

The motive of the defendant in this case was clear: to avoid being arrested. That was obvious because the defendant's assault on Officer McCarthy occurred only after Officer McCarthy attempted to arrest him, by evidence that the defendant tried to get away after his initial assault and by testimony that the defendant repeatedly screamed the word "freedom" during the altercation. In that respect, this case closely mirrors the facts in *Chiddick*. As in *Chiddick*, the jury was entitled to infer that the defendant's intention was to inflict "as much pain as he could" because otherwise Officer McCarthy would never let him go. Indeed, the defendant not only took swings at Officer McCarthy when Officer McCarthy initially attempted to arrest him but continued attempting to punch and kick him as the initial altercation continued on the ground. The defendant continued resisting even after other officers arrived to assist Officer McCarthy. The defendant's clear intention under the controlling case law is relevant in determining how much pain the defendant actually caused. Mr. Estavez's actions were more than "petty slaps, shoves, kicks and the like delivered out of hostility, meanness and similar motives." (*Chiddick*, 8 NY3d at 448.) They were a desperate attempt to break free.

Officer McCarthy testified about the duration of his pain, saying it lasted for a week. His injuries occurred in multiple parts of his body consisting of his face, rib cage and hand. The swelling on his face and the lacerations to his hand were documented by photographs. He testified about the impair-

ment of his ability to type on the evening of the assault and testified that the hand which was injured (his left hand) was his dominant one. He also testified that he could not wear his vest tightly around his body for a week because of the injury to his rib cage and that his ability to withdraw his gun would have been impaired for a few days if he had to withdraw it. Wearing his vest more tightly, he testified, would have made breathing painful and he in fact suffered pain in his rib cage for a week whenever he coughed or sneezed.

It is true that Officer McCarthy never testified about his degree of pain. But the other evidence which the jury received, in the court's view, allowed them to infer that the pain was substantial. The evidence clearly indicated that Officer McCarthy suffered "more than a little pain" and that his pain was not "trivial." (*Chiddick*, 8 NY3d at 447.) Moreover, the jury could have reasonably inferred that Officer McCarthy's reluctance to quantify his pain was consistent with his general stoic demeanor, his reluctance to seek medical treatment, take pain-killers or take advantage of the opportunity (which the evidence clearly allowed the jury to infer he had) to take a few days off work. The evidence also indicated that Officer McCarthy's physical condition was actually impaired, albeit to a level which in this court's view barely met the threshold for physical impairment under the controlling case law.

For all of those reasons, defendant's motion for a trial order of dismissal with respect to his conviction for assault in the second degree is denied.