People v Wheeler (2022 NY Slip Op 00442)





People v Wheeler


2022 NY Slip Op 00442


Decided on January 26, 2022


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on January 26, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

VALERIE BRATHWAITE NELSON, J.P.
ANGELA G. IANNACCI
SYLVIA O. HINDS-RADIX
JOSEPH A. ZAYAS, JJ.


2016-04755
 (Ind. No. 8985/14)

[*1]The People of the State of New York, respondent,
v
Elsun Wheeler, appellant.


Janet E. Sabel, New York, NY (Tomoeh Murakami Tse of counsel), for appellant.
Eric Gonzalez, District Attorney, Brooklyn, NY (Leonard Joblove and Keith Dolan of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Kings County (Vincent M. Del Giudice, J.), rendered April 7, 2016, convicting him of burglary in the second degree and assault in the second degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress identification evidence.
ORDERED that the judgment is reversed, on the law and as a matter of discretion in the interest of justice, the count of the indictment charging the defendant with assault in the second degree is dismissed, that branch of the defendant's omnibus motion which was to suppress two identifications of the defendant from arrest photographs is granted, and a new trial is ordered on the count of the indictment charging the defendant with burglary in the second degree, to be preceded by a hearing to determine whether an independent source exists for the burglary complainant's identification.
The defendant was indicted, inter alia, on charges in connection with a residential burglary allegedly committed on April 20, 2014, and for punching a police detective on October 28, 2014, as the detective was attempting to place him in a lineup.
During the investigation of the burglary, the complainant informed police that a Facebook photograph depicted the perpetrator of the burglary, and that photograph led police to the defendant's photograph from a prior arrest. On two occasions, the complainant was asked whether she could identify the individual depicted in an arrest photograph of the defendant, and she replied that he was the perpetrator of the burglary. In his omnibus motion, the defendant sought, inter alia, to suppress the burglary complainant's identification testimony on the ground that the two photographic identification procedures were impermissibly suggestive. After a hearing, the Supreme Court ruled that the identification of the defendant was not a product of a police-arranged identification procedure. After a jury trial, the defendant was convicted of burglary in the second degree and assault in the second degree. The defendant appeals.
Here, although the burglary complainant's identification of the Facebook photograph was not the product of a police-arranged identification procedure, the complainant's identifications of the defendant from a single arrest photograph were the result of unduly suggestive identification procedures, and those identifications should have been suppressed (see People v Marshall 26 NY3d 495, 506; People v Brown, 86 NY2d 728; People v Thornton, 236 AD2d 430). Accordingly, the defendant is entitled to a new trial on the count of burglary in the second degree, to be preceded by a hearing to determine whether an independent source exists for the complainant's identification of the defendant (see People v Burts, 78 NY2d 20, 23-24; People v Redding, 65 AD3d 1059, 1060).
The defendant's challenge to the legal sufficiency of the evidence is unpreserved for appellate review (see CPL 470.05[2]; People v Hawkins, 11 NY3d 484, 492). In any event, viewing the evidence in the light most favorable to the prosecution (see People v Contes, 60 NY2d 620, 621), we find that it was legally sufficient to establish the defendant's guilt of burglary in the second degree beyond a reasonable doubt. Moreover, in fulfilling our responsibility to conduct an independent review of the weight of the evidence (see CPL 470.15[5]; People v Danielson, 9 NY3d 342, 348), we nevertheless accord great deference to the jury's opportunity to view the witnesses, hear the testimony, and observe demeanor (see People v Mateo, 2 NY3d 383; People v Bleakley, 69 NY2d 490, 495). Upon reviewing the record here, we are satisfied that the verdict of guilt as to burglary in the second degree was not against the weight of the evidence (see People v Romero, 7 NY3d 633).
However, upon the exercise of our interest of justice jurisdiction (see CPL 470.05[2]), we conclude that the conviction of assault in the second degree is not supported by legally sufficient evidence that the detective sustained a "physical injury" within the meaning of Penal Law § 10.00(9). Physical injury is defined as "impairment of physical condition or substantial pain" (id.). The detective testified that defendant hit him in the mouth with his fist, that his lip bled, and that he felt severe pain at the time. There was no evidence, however, corroborating the detective's subjective description of the degree of pain he experienced (see People v Jhagroo, 186 AD3d 741, 743).
The detective was taken to the hospital by a coworker. His certified hospital records assessed a "[l]ip abrasion" and a "superficial laceration to right lower lip." It was noted that the detective "currently denies bleeding, denies head trauma." The detective did not receive stitches and went back to work that same day.
The record did not support a finding that the detective experienced substantial pain. At the time of his discharge from the hospital, the detective assessed his pain as a "3" and was advised to take Tylenol for pain. His "quality" of pain was characterized as "aching." Furthermore, there was no evidence as to the duration of any pain. Accordingly, there was insufficient evidence that the detective suffered a physical injury within the meaning of Penal Law § 10.00(9) (see People v Jimenez, 55 NY2d 895; People v Bernazard, 188 AD3d 1239; People v Stokes, 140 AD3d 800; People v Perry, 122 AD3d 775; People v Baksh, 43 AD3d 1072).
People v Chiddick (8 NY3d 445), cited by our dissenting colleague, which involved a cracked fingernail and bleeding requiring a bandage and tetanus shot, is distinguishable from the facts of this case. Further, although, in the instant case, the detective's coworker took him to the hospital immediately after the incident, the hospital records indicate that by the time he was treated, the detective seemingly had recovered from the initial shock, any bleeding had ceased, and pain was minimal. This case is distinguishable from People v Martinez (90 AD3d 409, 410), where the officer sought medical treatment when he experienced significant pain hours later, and suffered "extensive swelling and bruising, as well as pain and soreness" for the next three to five days, and from the other cases cited by our dissenting colleague (see People v Harris, 151 AD3d 490 [blow to the head causing significant bleeding]; People v Estevez, 145 AD3d 578 [officer repeatedly punched and kicked by defendant, causing swelling and bruising of the cheek, rib cage, and hand, resulting in soreness and pain for a week]; People v Krotoszynski, 43 AD3d 450, 453 [blow to the head causing cut to the victim's ear and bleeding and bruising of the face, resulting in pain for two weeks]; People v Stephenson, 36 AD3d 560 [victim punched in the mouth and bit on the biceps and shoulder, causing him to bleed]).
Therefore, we vacate the defendant's conviction of assault in the second degree and the sentence imposed thereon and dismiss that count of the indictment.
In light of our determinations, we need not reach the defendant's remaining contentions.
BRATHWAITE NELSON, J.P., IANNACCI and HINDS-RADIX, JJ., concur.
ZAYAS, J., concurs in part and dissents in part, and votes to modify the judgment, on the law, by vacating the conviction of burglary in the second degree and the sentence imposed thereon, to grant that branch of the defendant's omnibus motion which was to suppress two identifications of the defendant from arrest photographs, and to order a new trial on the count of the indictment charging the defendant with burglary in the second degree, to be preceded by a hearing to determine whether an independent source exists for the burglary complainant's identification, and as so modified, to affirm the judgment, with the following memorandum:
I agree with my colleagues in the majority that the defendant is entitled to a new trial on the burglary count because of the Supreme Court's erroneous resolution of that branch of his motion which was to suppress identification testimony. I disagree, however, with the conclusion that the defendant's conviction of assault in the second degree should be vacated and that count of the indictment dismissed because there was legally insufficient evidence of physical injury. I also conclude that the verdict as to this count was not against the weight of the evidence. The injuries that the detective sustained after being punched "very hard" in the face by the defendant—a bloody lip, swelling to his face, and pain that was initially severe and later "aching," and for which he sought treatment at a hospital—are quintessential examples of injuries that satisfy this element of the offense.
In October 2014, Detective Waziri Rumala arrested the defendant in connection with a burglary that had occurred several months earlier in Brooklyn, and brought him to the 75th Precinct station house, where he was placed in a holding cell. The defendant was "uncooperative," "aggressive," and "combative."
Detective Rumala went into the holding cell with a camera, and informed the defendant that he needed to be photographed and that he was going to be placed in a line-up. The defendant was lying down on a bench. As Detective Rumala approached him, the defendant stood up, got within approximately six inches of the detective, and then punched him in the face "very hard." Detective Rumala "felt pain" in his lower lip and right "cheek area." Other officers heard the commotion, came to Detective Rumala's assistance, and helped restrain the defendant.[FN1]
Detective Rumala's lip was bleeding, his right cheek was swollen, and he generally felt pain on the right side of his face. His "torso area" and lower back also were sore as a result of his efforts to restrain the defendant. Detective Rumala's overall level of pain was "severe," so one of his colleagues brought him to the hospital. Hospital records noted that Detective Rumala described his pain as "aching." After being discharged from the hospital, he returned to the station house so that he could finish processing the defendant's arrest.
At the conclusion of the People's case, the defendant moved, among other things, to dismiss the count of assault in the second degree. The Supreme Court denied the motion. The jury thereafter found the defendant guilty of that crime, as well as of burglary in the second degree.
As an initial matter, the defendant's legal sufficiency claim with respect to the assault [*2]in the second degree count is preserved. When the defendant moved for a trial order of dismissal on this count, he did so on the ground that there was legally insufficient evidence of physical injury. In denying the motion, the Supreme Court noted that "[t]he detective indicated that he was bleeding from the lip from a blow suffered at the hands of your client and that it hurt him." The defendant's legal sufficiency argument, then, was "specifically directed" at the physical injury element of the second-degree assault count (People v Hawkins, 11 NY3d 484, 492 [internal quotation marks omitted]; see CPL 470.05[2] [an issue is preserved "if in response to a protest by a party, the court expressly decided the question raised on appeal"]). Therefore, contrary to the majority's conclusion, the defendant's appellate claim to the same effect is preserved.
"The standard for reviewing the legal sufficiency of evidence in a criminal case is whether 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt'" (People v Contes, 60 NY2d 620, 621, quoting Jackson v Virginia, 443 US 307, 319 [emphasis in original]). In a legal sufficiency challenge, the People are entitled to every reasonable inference that can be drawn from the evidence (see People v Ford, 66 NY2d 428, 437). Therefore, "the availability of innocent inferences is not relevant" (People v Norman, 85 NY2d 609, 620).
Assault in the second degree in violation of Penal Law § 120.05(3) includes as an element that the defendant caused "physical injury" to, among other public servants, a police officer, in order to prevent the officer from performing a lawful duty. Physical injury is defined in the Penal Law as the "impairment of physical condition or substantial pain" (id. § 10.00[9]).
Substantial pain, however, is not defined in the Penal Law. And, "[o]f course [it is a condition that] cannot be defined precisely" (People v Chiddick, 8 NY3d 445, 447). "Pain need not . . . be severe or intense to be substantial" (id. at 447). But it must, to be sure, be "more than slight or trivial" (id.)—the sort of pain, in other words, that might be caused by "petty slaps, shoves, kicks and the like" (Matter of Philip A., 49 NY2d 198, 200 [internal quotation marks omitted]).
Beyond these general characterizations, the Court of Appeals has delineated several factors that bear on the determination of whether the degree of pain established at trial surpasses the threshold of "substantiality" (People v Chiddick, 8 NY3d at 447). "Perhaps most important is the injury the defendant inflicted, viewed objectively" (id.). In that regard, whether the victim sought medical treatment is often instructive (see id.). In addition, the defendant's motive can be a relevant consideration, since a defendant whose motive is served by inflicting a substantial degree of pain is more likely to have, in fact, done just that (see id. at 448). Generally, the question of whether the evidence is sufficient to establish a physical injury is one for the trier of fact (see People v Guidice, 83 NY2d 630, 636).
People v Chiddick (8 NY3d 445) is dispositive of the legal sufficiency question presented in this case. There, while the civilian victim was trying to prevent the defendant from fleeing from the scene of a burglary, the defendant bit his finger. The victim's fingernail cracked and his finger bled. He went to the hospital, mainly, it seems, to get a tetanus shot. At trial, the victim was asked if the bite caused him any pain. He said that it did. Asked how much pain he felt, he said it was "[i]n between 'a little' and 'a lot'" (id. at 447). Ultimately, he agreed that the pain he experienced could be characterized as "moderate" (id.). On those facts, the Court held that the evidence established that the victim had experienced substantial pain, and, accordingly, that there was legally sufficient evidence of physical injury (see id. at 446-447).
The injuries at issue here were not to a finger, but to Detective Rumala's mouth and cheek. And, viewed objectively, a "very hard" punch to the face, as the detective described it, is more than triflingly painful. Indeed, courts have consistently held that punches—including to areas of the body less sensitive than the face—can inflict substantial pain (see e.g. People v Harris, 151 AD3d 490, 490 [punch to head causing laceration and bleeding]; People v Martinez, 90 AD3d 409, 410 [punch to police officer's shoulder to avoid being apprehended]; People v Stephenson, 36 AD3d 560, 561 [defendant punched the victim in the mouth and bit him on the biceps and shoulder]; see also People v Krotoszynski, 43 AD3d 450, 453 [victim struck in the head with television remote [*3]control]). That Detective Rumala sought treatment at a hospital reinforces the conclusion that his injuries were substantially painful (see People v Martinez, 90 AD3d at 410). So, too, does the defendant's apparent motive—to avoid being photographed and then placed in a line-up (which his assault of Detective Rumala ultimately achieved)—since he could have believed that "petty slaps, shoves, [or] kicks" (Matter of Philip A., 49 NY2d at 200) would not suffice to accomplish that objective. In short, the evidence adduced at the defendant's trial was sufficient for the jury to conclude that Detective Rumala experienced substantial pain and, therefore, that he sustained a physical injury.
In reaching the opposite conclusion, my colleagues in the majority emphasize that Detective Rumala returned to work after being discharged from the hospital, that the hospital records indicate that he classified his level of pain as a "3," and that he did not say how long his pain persisted. But none of those things, individually or taken together, negate the otherwise sufficient evidence of physical injury, since they amount to, in essence, "a substituted fact-finding reassessment of the overall persuasiveness of the evidence" (People v Taylor, 94 NY2d 910, 912), rather than "a legal assessment of whether [an] inference[ ] of guilt could be rationally drawn from proven facts" (id. at 911).
At any rate, Detective Rumala explained that he returned to work after leaving the hospital because he needed to finish processing the defendant's arrest. The jury, then, reasonably could have inferred that Detective Rumala's choice to return to the station house was not an indication that his pain was slight or trivial, but was motivated, instead, by the simple fact that he had work to complete, and his pain was not so debilitating as to prevent him from getting it done.
The majority's reliance on the notation in the hospital records that Detective Rumala rated his level of pain as a three is also misplaced. Detective Rumala was not asked about this notation on direct or cross-examination. Nor was there any other testimony about the significance of such a pain score. In any event, the hospital records also indicate that Detective Rumala described his pain as "aching." And, to the extent the pain score notation conflicted with that description, or with Detective Rumala's testimony at trial regarding his injuries, the jury was in the best position to resolve the inconsistency (see People v Guidice, 83 NY2d at 636).
Detective Rumala also was not asked how long the pain to his mouth and cheek persisted. Regardless, "[t]he term 'substantial pain' does not connote that pain last for any particular period of time" (People v Estevez, 47 Misc 3d 497, 504 [Sup Ct, New York County], affd 145 AD3d 578). And, logically, pain that is intense but not particularly long-lasting could be considered substantial. Moreover, there appears not to have been any testimony along these lines in Chiddick, either, so its absence here clearly is not a significant shortcoming.
The majority cites five cases in support of its conclusion that Detective Rumala did not sustain a physical injury. But they are all distinguishable from this case. In People v Jimenez (55 NY2d 895), the Court of Appeals held, in a brief memorandum decision, that "[t]estimony that the victim suffered a one centimeter cut above her lip, without more, was not adequate to prove that the victim suffered either substantial pain . . . or impairment of a physical condition" (id. at 896 [emphasis added; citation and internal quotation marks omitted]). Here, however, the evidence related to Detective Rumala's injuries was much more extensive.
The evidence of physical injury in People v Perry (122 AD3d 775) that was found insufficient suffered from essentially the same deficiency that was present in People v Jimenez. The police officer victim, who sustained injuries while attempting to apprehend the fleeing defendant—a laceration to a finger, along with abrasions and swelling—did not testify at trial. And without his testimony, there was "[n]o evidence" (People v Perry, 122 AD3d at 776) that his injuries "caused him more than trivial pain, or that the use of his finger was impaired" (id.). Again, the same cannot be said in this case.
Two of the remaining three cases the majority cites, People v Bernazard (188 AD3d 1239) and People v Baksh (43 AD3d 1072), are distinguishable from this one inasmuch as the [*4]victims in those cases did not seek medical attention (see People v Bernazard, 188 AD3d at 1240; People v Baksh, 43 AD3d at 1074). Moreover, in People v Baksh, where this Court found that there was legally insufficient evidence of physical injury with respect to two complainants, one of them testified that he had a "little" pain for a couple of days, while the other said that he experienced "slight" pain for "a day or two" (People v Baksh, 43 AD3d at 10731074). In contrast, here, Detective Rumala indicated that he went to the hospital because his pain was severe, and, once there, described his pain as aching.
In the final case cited by the majority, People v Stokes (140 AD3d 800), the victim, a doctor on her way to work at a Brooklyn hospital, was shoved, pulled to the ground, and robbed. "[S]he sustained a laceration and a welt on the back of her head, scratches and bruises on her elbow, and other bruises" (id. at 801). She testified that she was sore for several days afterwards (see id.). This Court reduced the defendant's conviction of robbery in the second degree to robbery in the third degree, concluding that "there was insufficient evidence from which a jury could infer that the complainant suffered substantial pain or impairment of her physical condition" (id. at 801-802). But being pulled to the ground will, at least in most cases, result in less pain than being punched hard in the face, and severe pain is more significant than soreness. Therefore, People v Stokes is distinguishable.
In People v Chiddick (8 NY3d 445), the Court of Appeals acknowledged that the concept of substantial pain does not lend itself to a neat, simple definition. But the Court's message was clear: an injury does not have to be especially serious to support a finding that the victim experienced substantial pain; a cracked fingernail, related bleeding, and moderate pain will suffice.
The application of this relatively modest standard—which pertains not only to certain felony assault, burglary, and robbery charges, but to misdemeanor assaults as well (see Penal Law § 120.00)—has nevertheless led to results that are sometimes hard to reconcile. As one court aptly observed, the legal standard that was articulated in People v Chiddick has, through its seemingly inconsistent application in close cases, become "uncertain" (People v Estevez, 47 Misc 3d at 499). And it is "difficult" (id. at 505) to discern from these cases any "unifying principles" (id.) that can be used to consistently and fairly distinguish between injuries that are sufficient to support a finding of substantial pain and those that are not (see id. at 506).
In this case, though, I have no difficulty concluding that, viewed in the light most favorable to the People, the defendant's "hard punch" to Detective Rumala's mouth—delivered with enough force that he bled, felt severe pain, and went to the hospital—inflicted substantial pain. Therefore, I respectfully disagree with my colleagues in the majority, and conclude that the evidence was legally sufficient to establish the defendant's guilt of assault in the second degree beyond a reasonable doubt. And I reach the same conclusion under the less deferential standard this Court employs for reviewing the weight of the evidence (see People v Bleakley, 69 NY2d 490, 495).
ENTER:
Maria T. Fasulo
Clerk of the Court



Footnotes

Footnote 1:One of the detectives who assisted Detective Rumala testified at the defendant's trial. He substantiated Detective Rumala's account, though, from his perspective, he thought the defendant had struck Detective Rumala in his face with his elbow.