Appeal by the defendant from (1) a judgment of the Supreme Court, Kings County (Dowling, J.), rendered March 24, 2009, convicting him of manslaughter in the second degree, upon a jury verdict, and imposing sentence, and (2) a resentence of the same court imposed April 8, 2009.
Ordered that the appeal from so much of the judgment as imposed the sentence is dismissed, as that portion of the judgment was superseded by the resentence; and it is further,
Ordered that the judgment is affirmed insofar as reviewed; and it is further,
Ordered that the resentence is affirmed.
The defendant’s challenge to the legal sufficiency of the evidence is unpreserved for appellate review (see CPL 470.05 [2]; People v Hawkins, 11 NY3d 484 [2008]). In any event, viewing the evidence in the light most favorable to the prosecution (see People v Contes, 60 NY2d 620 [1983]), we find that it was legally sufficient to establish the defendant’s guilt beyond a reasonable doubt. Moreover, in fulfilling our responsibility to conduct an independent review of the weight of the evidence (see CPL 470.15 [5]; People v Danielson, 9 NY3d 342 [2007]), we nevertheless accord great deference to the jury’s opportunity to view the witnesses, hear the testimony, and observe demeanor (see People v Mateo, 2 NY3d 383, 410 [2004], cert denied 542 US 946 [2004]; People v Bleakley, 69 NY2d 490, 495 [1987]). Upon reviewing the record here, we are satisfied that the verdict of guilt was not against the weight of the evidence (see People v Romero, 7 NY3d 633 [2006]).
The Supreme Court providently exercised its discretion in making its Sandoval ruling (see People v Sandoval, 34 NY2d 371, 374 [1974]). The court struck an appropriate balance between the probative value of the defendant’s prior crimes in connection with the question of his credibility and the possible prejudice to the defendant (see People v Reid, 97 AD3d 1037, 1038 [2012]).
Contrary to the defendant’s contention, the Supreme Court properly admitted a sworn audiotaped statement from Timothy Dixon as evidence during the People’s case. A witness’s out-of- *742 court statements may be admitted as part of the People’s direct case where the People “demonstrate by clear and convincing evidence that the defendant, by violence, threats or chicanery, caused [the] witness’s unavailability” (People v Cotto, 92 NY2d 68, 75-76 [1998]; see People v Johnson, 93 NY2d 254, 256-257 [1999]; People v Geraci, 85 NY2d 359 [1995]; People v Major, 251 AD2d 999 [1998]). “Recognizing the surreptitious nature of witness tampering and that a defendant engaging in such conduct will rarely do so openly, resorting instead to subterfuge, the court can rely on and the prosecution can use circumstantial evidence in making the requisite determination” (People v Encarnacion, 87 AD3d 81, 87 [2011]; see People v Cotto, 92 NY2d at 76-77).
Here, at the Sirois hearing (see People v Sirois, 92 AD2d 618 [1983]), the People established that Dixon, who had given an audiotaped statement to an assistant district attorney on June 1, 2005, and had testified for the People before the grand jury in October 2006, disappeared during the course of the trial and was unavailable to testify. The evidence established that the defendant, in a recorded telephone conversation from jail on January 19, 2009, which was less than two weeks before the trial, discussed with his mother whether she had spoken with certain witnesses, and named some of the witnesses against him, including “Stuffy,” also known as Timothy Dixon. The defendant, while incarcerated, had telephone contact with Dixon on February 1, 2009, which was the eve of trial, as the trial commenced on February 2, 2009. Thereafter, Dixon left the assistant district attorney a voicemail message on February 4, 2009, the day before he was scheduled to appear in court, in which he expressed a reluctance to testify, in part, because he had been “getting phone calls.” In addition to the foregoing evidence, the People demonstrated that the defendant had also made a phone call from jail to Jada Adorno, the mother of the People’s witness Nicole Campbell, asking her to discourage her daughter from testifying (see People v Smith, 283 AD2d 189, 190 [2001] [“In addition to extensive evidence concerning the missing witness himself, the court properly considered evidence of defendant’s unsuccessful attempts to tamper with other witnesses since this evidence established a common scheme or plan to tamper with as many witnesses as possible”]). Under the circumstances of this case, the People established by clear and convincing evidence that the defendant wrongfully made use of his relationship with Dixon to pressure him not to testify (see People v Encarnacion, 87 AD3d at 87-89; People v Jernigan, 41 AD3d 331, 332-333 [2007]; People v Major, 251 AD2d at 999-1000).
Finally, the Supreme Court providently exercised its discre *743 tion in denying the defendant’s request for a mistrial based on a witness’s references to the defendant’s arrest for an unrelated crime (see People v Young, 48 NY2d 995 [1980]; People v Capers, 298 AD2d 184 [2002]). Skelos, J.P., Angiolillo, Roman and Cohen, JJ., concur.