People v Walton (2019 NY Slip Op 00623)





People v Walton


2019 NY Slip Op 00623


Decided on January 30, 2019


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on January 30, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

CHERYL E. CHAMBERS, J.P.
LEONARD B. AUSTIN
JEFFREY A. COHEN
COLLEEN D. DUFFY, JJ.


2014-04612
 (Ind. No. 2459/12)

[*1]The People of the State of New York, respondent,
v
Samuel Walton, appellant.


Paul Skip Laisure, New York, NY (Denise A Corsí of counsel), for appellant, and appellant pro se.
Eric Gonzalez, District Attorney, Brooklyn, NY (Leonard Joblove and Seth M. Lieberman of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant from an amended judgment of the Supreme Court, Kings County (Vincent Del Giudice, J.), rendered April 23, 2014, convicting him of murder in the second degree and criminal possession of a weapon in the second degree, upon a jury verdict, and imposing sentence.
ORDERED that the amended judgment is affirmed.
The defendant was convicted of murder in the second degree and criminal possession of a weapon in the second degree in connection with the shooting death of a man on the night of July 4, 2009. The victim was shot and killed by a man later identified as the defendant after the victim had engaged in a verbal altercation with the shooter and a woman who was with the shooter. The victim's brother, who had been walking with the victim and two other individuals on the night of the shooting, identified the defendant as the shooter and also identified the defendant's girlfriend as the woman who was with the defendant at the time of the shooting. During the investigation of the murder, which lasted almost three years before the defendant was arrested, another witness, the defendant's cousin, provided oral and written statements to the police that, inter alia, he saw the defendant with a gun shortly after the shooting and that the defendant told him he had shot someone.
The evidence at trial included, inter alia, the testimony of the victim's brother and his identification of the defendant and the woman who was with the defendant at the shooting. The defendant's cousin refused to testify at trial and the People then sought to admit the cousin's prior statements to the police. The People contended, among other things, that the defendant had threatened and coerced his cousin into refusing to testify. The Supreme Court then held a Sirois hearing (see People v Sirois, 92 AD2d 618; Matter of Holtzman v Hellenbrand, 92 AD2d 405, 415) on the issue.
During the hearing, the People sought to establish that the cousin was unavailable due to the actions of the defendant. The People presented phone records evidencing the dates and the content of certain calls made by the cousin to other individuals while the cousin was incarcerated at Riker's Island, and calls by the defendant to other individuals believed to be family members. The [*2]People contended these calls demonstrated that the defendant and other family members secured the cousin's agreement not to testify against the defendant. The People also represented to the Supreme Court that they planned to offer the testimony of an inmate who knew the defendant and his family, who claimed, among other things, that the defendant had told him that the defendant had "put the wolves out" on the cousin to keep him from testifying, and that the defendant was confident that he would beat the charges as a result. According to the People, the inmate subsequently refused to testify at the hearing out of fear. An Assistant District Attorney testified at the hearing as to the substance of her interview of the inmate, which had taken place the day before.
At the hearing, the People argued that the recorded telephone calls showed that the cousin's familial relationship with the defendant and that the threats made to the cousin resulted in him refusing to cooperate in the prosecution of the defendant. The Supreme Court held that the People established by clear and convincing evidence that the defendant's misconduct was the cause of the cousin's refusal to testify. As a result, the cousin's prior written statement was read to the jury, and a recording of the cousin's oral statement, which was substantially similar to the written statement, was played in open court. The defendant was thereafter convicted of murder in the second degree and criminal possession of a weapon in the second degree and sentenced to consecutive terms of imprisonment. The defendant appeals.
We agree with the Supreme Court's determination denying, without a hearing, the defendant's motion to dismiss the indictment. Under the facts of this case, the defendant's contentions that he was denied his right to a speedy trial and his due process right to prompt prosecution are without merit. A defendant's right to a speedy trial is guaranteed both by the United States Constitution (see US Const 6th, 14th Amends; Klopfer v North Carolina, 386 US 213, 223), and by statute (see CPL 30.20[1]; Civil Rights Law § 12). Although an unjustified delay in prosecution will deprive a defendant of the State constitutional right to due process (see NY Const, art I, § 6; People v Decker, 13 NY3d 12, 14; People v Staley, 41 NY2d 789, 791), "a determination made in good faith to delay prosecution for sufficient reasons will not deprive defendant of due process even though there may be some prejudice to defendant" (People v Vernace, 96 NY2d 886, 888; see People v Decker, 13 NY3d at 14).
The Court of Appeals has identified five factors to be analyzed in determining whether there has been undue delay: (1) the extent of the delay; (2) the reason for the delay; (3) the nature of the underlying charges; (4) any extended period of pretrial incarceration; and (5) any impairment of the defendant's defense (see People v Decker, 13 NY3d at 14-15; People v Taranovich, 37 NY2d 442, 445). These factors apply to both a determination of whether a defendant's constitutional right to a speedy trial has been violated and an assessment of an alleged deprivation of due process (see People v Decker, 13 NY3d at 15; People v Romeo, 12 NY3d 51, 55).
Here, the Supreme Court appropriately balanced the requisite factors in denying the defendant's motion to dismiss the indictment. Although more than 34 months lapsed between the murder of the victim and the indictment, the People demonstrated that the only available evidence after the murder consisted of the account of a single witness. Accordingly, the People had a good-faith basis to continue to investigate to gather sufficient evidence before arresting the defendant (see People v Decker, 13 NY3d at 14; People v Denis, 276 AD2d 237, 247-248; People v LaRocca, 172 AD2d 628, 628). Moreover, given the serious nature of the charge and the fact that the defendant was not incarcerated during that 34 month period, and the defendant's failure to demonstrate prejudice resulting from the delay, we agree with the court's determination to deny the defendant's motion (see People v Vernace, 96 NY2d at 888; People v Taranovich, 37 NY2d at 445-446).
We also agree with the Supreme Court's determination to allow the People to proffer the cousin's prior sworn statements as part of their direct case because the People "demonstrate[d] by clear and convincing evidence that the defendant, by violence, threats or chicanery, caused [the] witness's unavailability" (People v Cotto, 92 NY2d 68, 75-76; see People v Geraci, 85 NY2d 359, 365). Misconduct is not limited to threats or intimidation; it can also include situations where, as here, the People established by clear and convincing evidence that the defendant used his close personal relationship with his cousin and/or threats to pressure him not to testify (see People v Cotto, [*3]92 NY2d at 75-76; People v Evans, 127 AD3d 780, 781; People v Leggett, 107 AD3d 741, 742). Accordingly, the People were properly allowed to use the cousin's prior statements as part of their direct case at trial (see People v Geraci, 85 NY2d at 362).
The defendant's contention that the Supreme Court improperly admitted into evidence a photograph of the victim depicting the victim while he was still alive is unpreserved for appellate review. In any event, although we disagree with the court's determination to admit the photograph, as the victim's appearance or identity was not relevant to a material issue at trial, the error was harmless (see People v Stevenson, 158 AD3d 825, 826; People v Thompson, 34 AD3d 852, 854), as there was overwhelming evidence of the defendant's guilt, and no significant probability that the error contributed to his conviction (see People v Crimmins, 36 NY2d 230, 240-241).
The defendant's contentions that the prosecutor's opening and summation remarks constituted reversible error are unpreserved for appellate review (see CPL 470.05[2]; People v Romero, 7 NY3d 911, 912; People v Balls, 69 NY2d 641, 642). In any event, the remarks regarding the cousin's statements were fair comment on the evidence, and comments on the defense counsel's failure to address the identification of the defendant's girlfriend were a fair response to arguments presented by the defendant's counsel in summation (see People v Galloway, 54 NY2d 396, 399; People v Ferdinand, 161 AD3d 767). Although the People's remarks as to who was present in the audience at trial and the "outrageous" nature of the shooting and comments evoking July 4th as a family holiday were improper (see People v Redd, 141 AD3d 546, 550; People v Walters, 251 AD2d 433, 434), those remarks constituted harmless error, as the evidence of the defendant's guilt was overwhelming and there is no significant probability that the few improper comments contributed to his convictions (see People v Crimmins, 36 NY2d at 241-242; People v Roscher, 114 AD3d 812, 813).
The defendant was not deprived of the effective assistance of counsel (see People v Ramirez, 146 AD3d 987, 988; People v Singh, 138 AD3d 767, 768).
The defendant's pro se contention that the Supreme Court should have suppressed evidence of the lineup identification because the People failed to comply with the notice requirement of CPL 710.30 is without merit. Notice of the lineup could not have been given within 15 days of arraignment because the lineup had not occurred at that time; instead, it was conducted nearly seven months later, after the People moved to compel a postindictment lineup for a witness who had previously identified the defendant from a photo array and the defendant consented to the lineup. The People met their obligation to give prompt notice of their intention to use the identification at trial by their motion to compel the lineup procedure (see CPL 710.30; People v Green, 127 AD3d 1473, 1475-1476; People v Boswell, 193 AD2d 690, 690). Moreover, defense counsel was present at the lineup, and the pretrial Wade hearing (see United States v Wade, 388 US 218), which addressed the admissibility of the identification, provided sufficient notice to the defendant of the People's intention to use the identification at trial (see People v Green, 127 AD3d at 1475-1476; People v Boswell, 193 AD2d at 690).
We agree with the Supreme Court's determination to impose consecutive sentences for the convictions of murder in the second degree and criminal possession of a weapon in the second degree in light of the evidence at trial showing that the defendant was carrying the subject weapon in his waistband prior to any altercation with the victim and, thus, forming his intent to shoot the victim (see People v Brown, 21 NY3d 739, 751-752; People v Fabers, 133 AD3d 616, 618; People v Mitchell, 118 AD3d 1417, 1418-1419).
The defendant's remaining contention raised in his pro se supplemental brief is unpreserved for appellate review and, in any event, without merit.
CHAMBERS, J.P., AUSTIN, COHEN and DUFFY, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court