People v Wilkinson (2020 NY Slip Op 03808)





People v Wilkinson


2020 NY Slip Op 03808


Decided on July 8, 2020


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 8, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ALAN D. SCHEINKMAN, P.J.
HECTOR D. LASALLE
VALERIE BRATHWAITE NELSON
ANGELA G. IANNACCI, JJ.


2015-08132
 (Ind. No. 10-00082)

[*1]The People of the State of New York, respondent,
v
Keith Wilkinson, appellant.


Thomas T. Keating, Dobbs Ferry, NY, for appellant, and appellant pro se.
Anthony A. Scarpino, Jr., District Attorney, White Plains, NY (Raffaelina Gianfrancesco and Steven A. Bender of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Westchester County (Barbara A. Zambelli, J.), rendered August 11, 2015, convicting him of murder in the second degree (two counts), robbery in the first degree, burglary in the first degree, and assault in the second degree, upon a jury verdict, and imposing sentence.
ORDERED that the judgment is modified, on the law, by providing that the sentence imposed upon the conviction of burglary in the first degree shall run concurrently with the sentence imposed upon the conviction of assault in the second degree; as so modified, the judgment is affirmed.
The defendant was previously convicted, inter alia, of two counts of murder in the second degree, after a jury trial. That judgment of conviction was reversed by this Court and a new trial was ordered (see People v Wilkinson, 120 AD3d 521). After the second jury trial, the defendant was convicted of murder in the second degree (two counts), robbery in the first degree, burglary in the first degree, and assault in the second degree.
Viewing the evidence in the light most favorable to the prosecution (see People v Contes, 60 NY2d 620, 621), we find that it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt (see People v Danielson, 9 NY3d 342, 349; Peoplev Bleakley, 69 NY2d 490, 495). Moreover, upon our independent review pursuant to CPL 470.15(5), we are satisfied that the verdict was not against the weight of the evidence (see People v Romero, 7 NY3d 633, 643-644).
Prior to the defendant's second trial, the Supreme Court conducted a Sirois hearing (see People v Sirois, 92 AD2d 618; Matter of Holtzman v Hellenbrand, 92 AD2d 405) to determine whether certain testimony elicited at the defendant's first trial would be admitted at the second trial because the defendant's misconduct induced two witnesses to be unavailable to testify at the second trial. The court determined that the sworn testimony of Marlon Nelson from the defendant's first trial would be admitted at the second trial and limited the defendant's cross-examination of Dania Sayers at the second trial regarding her failure to recall during the first trial.
Prior testimony of a witness may be admitted as direct evidence at trial where the witness is unavailable, or is unwilling to testify, or is influenced to give false trial testimony, thereby being rendered effectively unavailable (see People v Smart, 23 NY3d 213, 220; People v Geraci, 85 NY2d 359, 366). The evidence must establish that the witness's unavailability or unwillingness was procured by intentional misconduct on the part of the defendant which was aimed at preventing the witness from testifying truthfully (see People v Smart, 23 NY3d at 220; People v Geraci, 85 NY2d at 366). The People bear the burden of establishing at the Sirois hearing, by clear and convincing evidence, that the defendant engaged in conduct aimed at preventing the witness from testifying and caused that witness's decision not to testify or to plead the Fifth Amendment (see People v McCune, 98 AD3d 631, 632). " Recognizing the surreptitious nature of witness tampering and that a defendant engaging in such conduct will rarely do so openly, resorting instead to subterfuge, the court can rely on and the prosecution can use circumstantial evidence in making the requisite determination'" (People v Leggett, 107 AD3d 741, 742, quoting People v Encarnacion, 87 AD3d 81, 87; see People v Geraci, 85 NY2d at 369). Misconduct is defined "broadly to include intimidation and bribery, threats, and the use of a relationship to improperly procure a witness's silence" (People v Encarnacion, 87 AD3d at 86 [citation omitted]; see People v Jernigan, 41 AD3d 331, 332).
We agree with the Supreme Court's determination that the People established, by clear and convincing evidence, that the defendant's intentional misconduct during the first trial resulted in Nelson being unavailable to testify at the second trial and caused Sayers's failure to recall at the first trial because of her concern for the safety of herself and her family (see People v Smart, 23 NY3d at 220; People v Geraci, 85 NY2d at 366).
With regard to Nelson, the evidence demonstrated that the defendant was both directly and indirectly responsible for procuring Nelson's absence at the second trial as a result of shots having been fired at Nelson's car, and threats having been made about kidnaping his son and that Nelson should leave the state.
With regard to Sayers, the evidence showed that the defendant had physically abused her repeatedly in the past and had threatened to kill her and/or her grandmother if she testified. To allow the defendant to impeach Sayers with her testimony from the first trial regarding her failure to recall would reward the defendant for his intimidation of her (see People v Bosier, 6 NY3d 523, 528). Importantly, during the second trial, the defendant had a full opportunity to cross-examine Sayers using her grand jury testimony and her prior written statements, which included letters and emails sent by Sayers. In fact, at the second trial, defense counsel, during his cross-examination of Sayers, opened the door for Sayers to explain that her prior inconsistent statements were prompted by her fear of the defendant. Defense counsel even elicited testimony from Sayers regarding her prior testimony and that she feared for her safety because of the defendant.
In any event, an alleged violation of a defendant's right to confrontation is subject to harmless error analysis (see Cruz v New York, 481 US 186, 194; People v Hardy, 4 NY3d 192). Here, there was overwhelming evidence of the defendant's guilt, and there was no reasonable possibility that any error in curtailing the defendant's ability to fully cross-examine Sayers regarding her testimony from the first trial affected the jury's verdict (see People v Douglas, 4 NY3d 777, 779). In fact, had the defendant been able to further impeach Sayers at the second trial with her testimony that she did not recall at the first trial, any inconsistencies could easily be explained by Sayers testifying that she feared for her safety at the time of the first trial, thereby further bolstering the People's case. Accordingly, any claimed error with regard to the cross-examination of Sayers was harmless beyond a reasonable doubt (see id. at 779).
To the extent that any of the prosecutor's summation comments were improper, they were not so flagrant or pervasive as to deprive the defendant of a fair trial (see People v Williams, 147 AD3d 983, 984; People v Fields, 115 AD3d 673, 674).
Contrary to the defendant's contention, the testimony of fellow inmates concerning the defendant's threats to kidnap and/or kill witnesses was properly admitted as evidence of the [*2]defendant's consciousness of guilt of the murder (see People v Viera, 133 AD3d 622, 624; People v Green, 92 AD3d 953, 954).
The defendant's contention that his right to present a defense was curtailed, based on the Supreme Court's limitation of the cross-examination of two witnesses regarding other possible suspects, is unpreserved for appellate review, as the defendant did not raise this particular contention at trial (see CPL 470.05[2]; People v Lopez, 82 AD3d 1264, 1264; People v Haddock, 79 AD3d 1148, 1149). In any event, where, as here, "the evidence is so remote and speculative that it does not sufficiently connect the third party to the crime," it was properly precluded (People v Powell, 27 NY3d 523, 531; see People v Cepeda, 48 AD3d 294, 294).
A determination to substitute or disqualify counsel falls within the trial court's discretion (see People v Watson, 26 NY3d 620, 624; People v Carncross, 14 NY3d 319, 330). " That discretion is especially broad when the defendant's actions with respect to counsel place the court in the dilemma of having to choose between undesirable alternatives, either one of which would theoretically provide the defendant with a basis for appellate review'" (People v Watson, 26 NY3d at 624, quoting People v Tineo, 64 NY2d 531, 536; see People v Carncross, 14 NY3d at 330). Here, the Supreme Court carefully balanced the defendant's right to counsel of his own choosing against his right to effective assistance of counsel, and properly determined, based on the potential conflict, that the safer course of action was to relieve the defendant's counsel and appoint new counsel (see People v Watson, 26 NY3d at 628; People v Carncross, 14 NY3d at 330).
Since some of the defendant's allegations raised in his pro se supplemental brief that he was deprived of the effective assistance of counsel involve matter appearing on the record, while others involve matter outside the record, the defendant's contention presents a "mixed claim of ineffective assistance" (People v Maxwell, 89 AD3d 1108, 1109; see People v Freeman, 93 AD3d 805, 806). Since the defendant's claim of ineffective assistance of counsel cannot be resolved without reference to matter outside the record, a CPL 440.10 proceeding is the appropriate forum for reviewing the claim in its entirety, and we decline to review the claim on this direct appeal (see People v Freeman, 93 AD3d at 806; People v Maxwell, 89 AD3d at 1109).
As the People concede, the crime of burglary in the first degree did not involve disparate or separate acts from the crime of assault in the second degree, and therefore, the sentence imposed upon the conviction of burglary in the first degree must run concurrently with the sentence imposed upon the conviction of assault in the second degree (see People v Gabbidon, 272 AD2d 411, 412; People v Campos, 206 AD2d 633, 636). However, contrary to the defendant's contention, the sentences imposed upon the convictions of murder in the second degree (felony murder) and the conviction of robbery in the first degree relating to one victim involved disparate and separate acts from the assault relating to the other victim, and therefore, consecutive sentences were properly imposed (see People v Rodriguez, 25 NY3d 238, 244).
The defendant's remaining contention raised in his pro se supplemental brief is unpreserved for appellate review and, in any event, without merit.
SCHEINKMAN, P.J., LASALLE, BRATHWAITE NELSON and IANNACCI, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court