People v Bernazard (2020 NY Slip Op 07083)





People v Bernazard


2020 NY Slip Op 07083


Decided on November 25, 2020


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on November 25, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

RUTH C. BALKIN, J.P.
JEFFREY A. COHEN
SYLVIA O. HINDS-RADIX
FRANCESCA E. CONNOLLY, JJ.


2016-05886
 (Ind. No. 1764/13)

[*1]The People of the State of New York, respondent,
v
Jose Bernazard, appellant.


Paul Skip Laisure, New York, NY (Ronald Zapata of counsel), for appellant.
Melinda Katz, District Attorney, Kew Gardens, NY (Johnnette Traill and Michael J. Curtis of counsel), for respondent.
Appeal by the defendant from a judgment of the Supreme Court, Queens County (Deborah Stevens Modica, J.), rendered May 19, 2016, convicting him of attempted murder in the second degree, burglary in the first degree, attempted assault in the first degree, assault in the second degree, stalking in the first degree, aggravated criminal contempt (two counts), assault in the third degree (two counts), criminal obstruction of breathing or blood circulation, criminal trespass in the second degree, criminal mischief in the fourth degree, and criminal contempt in the second degree (three counts), upon a jury verdict, and sentencing him to a determinate term of imprisonment of 25 years to be followed by a period of postrelease supervision of 5 years on the conviction of attempted murder in the second degree, a determinate term of imprisonment of 25 years to be followed by a period of postrelease supervision of 5 years on the conviction of burglary in the first degree, a determinate term of imprisonment of 15 years to be followed by a period of postrelease supervision of 5 years on the conviction of attempted assault in the first degree, a determinate term of imprisonment of 7 years to be followed by a period of postrelease supervision of 3 years on the conviction of assault in the second degree, a determinate term of imprisonment of 7 years to be followed by a period of postrelease supervision of 3 years on the conviction of stalking in the first degree, indeterminate terms of imprisonment of 2&frac13; to 7 years on the convictions of aggravated criminal contempt (two counts), and definite terms of imprisonment of 1 year each on the convictions of assault in the third degree (two counts), criminal obstruction of breathing or blood circulation, criminal trespass in the second degree, criminal mischief in the fourth degree, and criminal contempt in the second degree (three counts), with the sentences imposed on the convictions



DECISION & ORDER
of attempted murder in the second degree, burglary in the first degree, assault in the second degree, and aggravated criminal contempt under count 28 of the indictment to run consecutively with each other, and with all other sentences to run concurrently to each other and to those consecutive sentences.
ORDERED that the judgment is modified, as a matter of discretion in the interest of justice, (1) by vacating the conviction of assault in the second degree, vacating the sentence imposed thereon, and dismissing that count of the indictment, (2) by reducing the sentence imposed on the conviction of burglary in the first degree from a determinate term of imprisonment of 25 years to be followed by a period of postrelease supervision of 5 years to a determinate term of imprisonment of [*2]10 years to be followed by a period of postrelease supervision of 5 years, and (3) by directing that the consecutive sentence imposed on the conviction of aggravated criminal contempt under count 28 of the indictment shall instead run concurrently with the consecutive sentences imposed on the convictions of attempted murder in the second degree and burglary in the first degree; as so modified, the judgment is affirmed.
We agree with the defendant's contention that the evidence was legally insufficient to support his conviction of assault in the second degree. While the defendant failed to preserve this challenge, we reach it in the exercise of our interest of justice jurisdiction (see CPL 470.15[6][a]). Viewing the evidence in the light most favorable to the prosecution (see People v Contes, 60 NY2d 620, 621), it was legally insufficient to establish, beyond a reasonable doubt, that the child complainant sustained a "physical injury" within the meaning of Penal Law § 10.00(9). Physical injury is defined as "impairment of physical condition or substantial pain" (Penal Law § 10.00[9]). The several witnesses described only a minor injury, stated variously that they saw "a redness" on the child's cheek, or a slight swelling under his eye and cheek, or a bruise to the right cheek, which was treated with a cold pack. Nor did the record support a finding that the child complainant experienced substantial pain because he experienced only tenderness for one to two hours after the incident. Accordingly, there was insufficient evidence that the child complainant suffered a "physical injury" within the meaning of Penal Law § 10.00(9) (see People v Fews, 148 AD3d 1180, 1181-1182; People v Perry, 122 AD3d 775, 776; People v Boley, 106 AD3d 753, 753-754; People v Baksh, 43 AD3d 1072, 1073-1074; People v Richmond, 36 AD3d 721, 722). We therefore vacate the defendant's conviction of assault in the second degree and the sentence imposed thereon and dismiss that count of the indictment.
Contrary to the defendant's contention, we agree with the Supreme Court's admission of the grand jury testimony of the adult complainant, as well as her June 17, 2013 recorded statement to an assistant district attorney, during the People's case. Prior testimony of a witness may be admitted as direct evidence at trial where the witness is unavailable, or is unwilling to testify, or is influenced to give false trial testimony, thereby being rendered effectively unavailable (see People v Smart, 23 NY3d 213, 220; People v Geraci, 85 NY2d 359, 366). The evidence must establish that the witness's unavailability or unwillingness was procured by intentional misconduct on the part of the defendant which was aimed at preventing the witness from testifying truthfully (see People v Smart, 23 NY3d at 220; People v Geraci, 85 NY2d at 366). The People bear the burden of establishing at the Sirois hearing (see People v Sirois, 92 AD2d 618), by clear and convincing evidence, that the defendant engaged in conduct aimed at preventing the witness from testifying and caused that witness's decision not to testify or to plead the Fifth Amendment (see People v McCune, 98 AD3d 631, 632). "'Recognizing the surreptitious nature of witness tampering and that a defendant engaging in such conduct will rarely do so openly, resorting instead to subterfuge, the court can rely on and the prosecution can use circumstantial evidence in making the requisite determination'" (People v Leggett, 107 AD3d 741, 742, quoting People v Encarnacion, 87 AD3d 81, 87; see People v Geraci, 85 NY2d at 369). Misconduct is defined "broadly to include intimidation and bribery, and the use of a relationship to improperly procure a witness's silence" (People v Encarnacion, 87 AD3d at 86 [citation omitted]; see People v Jernigan, 41 AD3d 331, 332).
Here, at the Sirois hearing, the People established that the adult complainant was fully cooperative with the prosecution from the day of the incident in June 2013 until the end of September 2013. The adult complainant gave a recorded statement to an assistant district attorney (hereinafter the ADA) on June 17, 2013, and testified for the People before the grand jury in June and July 2013. Further, the adult complainant always returned the ADA's phone calls prior to the end of September 2013. The People further established, by clear and convincing evidence, that the defendant began calling the adult complainant from Rikers Island at the beginning of September 2013 in violation of a full order of protection. A total of 67 calls were made to the adult complainant between September 10, 2013, and October 14, 2013, and the actual content of 16 of those calls was played at the hearing. The defendant frequently called the adult complainant from 3 to 11 times a day; in 5 of the recorded telephone calls, the defendant told the adult complainant not to cooperate with the prosecutor; the defendant frequently used emotional manipulation by repeatedly telling the [*3]adult complainant how much he loved, missed, and needed her; the defendant further played on the adult complainant's guilt by telling her how much pain he was in, that he did not deserve the punishment that he was receiving, and that it was now time for her to give him all of her love. The People further established that by October 21, 2013, the adult complainant would not cooperate with the People, making changed statements requiring the prosecution's need to file two Brady disclosures (see Brady v Maryland, 373 US 83). Under the circumstances of this case, the People established, by clear and convincing evidence, that the defendant wrongfully made use of his relationship with the adult complainant to pressure her to change her testimony (see People v Leggett, 107 AD3d at 741-742; People v Encarnacion, 87 AD3d at 87-89; People v Jernigan, 41 AD3d at 332-333; People v Major, 251 AD2d 999, 999-1000).
The People met their burden of proving the legality of consecutive sentences by establishing that the convictions arose out of separate and distinct criminal acts (see People v Laureano, 87 NY2d 640, 643; People v Brown, 80 NY2d 361, 364; People v Brathwaite, 63 NY2d 839, 843).
However, the sentence imposed was excessive to the extent indicated herein (see People v Suitte, 90 AD2d 80).
BALKIN, J.P., COHEN, HINDS-RADIX and CONNOLLY, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court