People v Bryant (2021 NY Slip Op 07582)





People v Bryant


2021 NY Slip Op 07582


Decided on December 30, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:December 30, 2021

110448
[*1]The People of the State of New York, Respondent,
v
Christopher Bryant, Appellant.

Calendar Date:October 15, 2021

Before:Egan Jr., J.P., Clark, Aarons, Pritzker and Reynolds Fitzgerald, JJ.

Paul J. Connolly, Delmar, for appellant.
P. David Soares, District Attorney, Albany (Emily Schultz of counsel), for respondent.



Reynolds Fitzgerald, J.
Appeal from a judgment of the County Court of Albany County (Lynch, J.), rendered January 5, 2018, upon a verdict convicting defendant of the crimes of criminal possession of a weapon in the second degree, menacing in the second degree and assault in the third degree.
Defendant was indicted and charged with criminal possession of a weapon in the second degree, menacing in the second degree and assault in the third degree in connection with an incident that occurred in March 2017 in the City of Albany, wherein defendant allegedly punched the victim in the face and displayed what appeared to be a firearm. Defendant was apprehended within hours of this incident, and a subsequent search of the residence that defendant shared with his girlfriend, Shariyah Daniels, revealed, among other things, a loaded handgun secreted in a woman's boot.
Following unsuccessful motions to, among other things, sever the weapon charge from the remaining counts of the indictment, suppress defendant's postarrest statements to law enforcement and preclude evidence of certain uncharged crimes/prior bad acts, the matter proceeded to trial, at which time the People were unable to locate the victim. County Court conducted a Sirois hearing midtrial and thereafter permitted the People to introduce the victim's grand jury testimony into evidence. The jury convicted defendant of all charges, and County Court sentenced defendant — as a second felony offender — to a prison term of 10 years followed by five years of postrelease supervision upon his conviction of criminal possession of a weapon in the second degree and to time served upon the remaining convictions. This appeal by defendant followed.
Initially, we reject defendant's contention that the verdict is not supported by legally sufficient evidence and, further, is against the weight of the evidence. "When assessing the legal sufficiency of a jury verdict, we view the facts in the light most favorable to the People and examine whether there is a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime proved beyond a reasonable doubt" (People v Campbell, 196 AD3d 834, 835 [2021] [internal quotation marks and citations omitted], lvs denied 37 NY3d 1025 [2021]). "In reviewing whether a conviction is supported by the weight of the evidence, we decide whether, based on all the credible evidence, a different finding would not have been unreasonable, and then, like the trier of fact below, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn [there]from" (People v Brown, 195 AD3d 1163, 1164 [2021] [internal quotation marks and citations omitted], lv denied 37 NY3d 1025 [2021]).
As relevant here, "[a] person is guilty of assault in the third degree when . . . [w]ith intent to cause physical injury to another person, he [or she] causes such injury to such person" (Penal Law § 120.00 [[*2]1]). "Physical injury, in turn, is defined as 'impairment of physical condition or substantial pain'" (People v Rudge, 185 AD3d 1214, 1215 [2020], lv denied 35 NY3d 1070 [2020], quoting Penal Law § 10.00 [9]). Substantial pain need not "be severe or intense to be substantial," but such pain "is more than slight or trivial" (People v Chiddick, 8 NY3d 445, 447 [2007]). Additionally, "[a] person is guilty of menacing in the second degree when . . . [h]e or she intentionally places or attempts to place another person in reasonable fear of physical injury . . . by displaying . . . what appears to be a pistol, revolver . . . or other firearm" (Penal Law § 120.14 [1]).
The victim's grand jury testimony revealed that, on the evening in question, she and a friend were walking along Henry Johnson Boulevard in Albany when they were nearly struck by a red sedan. The vehicle was operated by Daniels, who had attended school with the victim, and an individual later identified as defendant was a passenger in the vehicle. Words were exchanged, Daniels and defendant exited the vehicle and, as relevant here, "someone spit[] on [the victim's] back." When the victim turned around, defendant punched her "in [her] face extremely hard" on the left side — "like [she] was a man" — causing her to "stutter[] back and hit a pole" in something of a daze. As Daniels grabbed the victim's bag and ran to the car, the victim saw defendant "gripping at his waist" and observed "a black and silver object . . . [that] look[ed] like a gun." Defendant continued yelling at the victim, stating, "I'm a shooter," and indicated that his name was "Brisk." The victim — "scared for [her] life" — ran away. According to the victim, the punch hurt "[t]remendously," and she experienced some swelling and mild bruising as a result. The victim's mother and Anthony DiGiuseppe, a detective with the Albany Police Department, testified that they observed swelling on the victim's face following this incident — although their testimony was inconsistent regarding the precise location thereof.
Defendant does not dispute that he was involved in an altercation with the victim. Indeed, he acknowledged in his recorded interview with DiGiuseppe — a redacted version of which was admitted into evidence — that he grabbed the victim's shirt and pushed her away in an effort to break up the fight between Daniels and the victim. Rather, defendant argues — as to the assault charge — that there was insufficient evidence that the victim sustained a physical injury and — as to the menacing charge — that the People failed to establish that he displayed what appeared to be a firearm. We disagree. The victim's account of the incident — if credited — constitutes legally sufficient evidence to sustain the assault and menacing convictions. Further, although a different verdict would not have been unreasonable, we find that the jury's verdict as to those charges is in accord with the weight of the evidence.
As [*3]to the weapon charge, "[a] person is guilty of criminal possession of a weapon in the second degree when . . . such person possesses any loaded firearm" (Penal Law § 265.03 [3]).[FN1] A "firearm" is defined — as relevant here — as "any pistol or revolver" (Penal Law § 265.00 [3] [a]), and a "loaded firearm" means "any firearm loaded with ammunition or any firearm which is possessed by one who, at the same time, possesses a quantity of ammunition which may be used to discharge such firearm" (Penal Law § 265.00 [15]; see People v McCoy, 169 AD3d 1260, 1262 [2019], lv denied 33 NY3d 1033 [2019]). "[A] defendant may be found to possess a firearm through actual, physical possession or through constructive possession" — the latter of which "requires proof that the defendant exercised dominion or control over the property by a sufficient level of control over the area in which the [weapon] is found" (People v McCoy, 169 AD3d at 1262 [internal quotation marks and citations omitted]; accord People v Sloley, 179 AD3d 1308, 1309 [2020], lv denied 35 NY3d 974 [2020]; see Penal Law § 10.00 [8]). "Constructive possession may be established through circumstantial evidence" (People v Sloley, 179 AD3d at 1309 [internal quotation marks, brackets and citation omitted]), and the defendant's access to the area where the firearm was discovered need not be exclusive in order to establish his or her constructive possession thereof (see People v Kalabakas, 183 AD3d 1133, 1140 [2020], lv denied 35 NY3d 1067 [2020]).
When the police searched the premises located at 204 Clinton Avenue, they found a .22 caliber pistol — loaded with four live rounds of ammunition — inside of a women's boot in a bedroom. The gun, which was described as a "pocket pistol," was silver and white in color and did not match the victim's description of the weapon defendant previously displayed to her. Additional ammunition was present in the bedroom and the entryway of the premises, and subsequent test-firing of the seized weapon confirmed that it was operable. Although a search of the premises did not disclose any mail or other personal belongings that could be identified as belonging to defendant, a police officer who was providing outreach services to defendant testified that, two days prior to the incident, defendant indicated that he was living at 204 Clinton Avenue with his girlfriend,[FN2] and a duffle bag containing men's clothing was found in the bedroom. Similarly, no fingerprints were recovered from the seized weapon, but subsequent analysis of the mixture of DNA found on the trigger of the gun generated a profile consistent with two donors, one of which was male. With respect to the portion of the profile that was suitable for comparison, Daniels was excluded as a possible contributor, and defendant was "included as a possible contributor of DNA to that mixture profile." Although defendant denied that the gun was his, he insisted that the weapon did not belong to Daniels, and DiGiuseppe [*4]testified that Daniels was "[v]ery upset" when she learned that a gun had been found in the house. Such proof, in our view, constitutes legally sufficient evidence to support the weapon conviction. Further, although a different verdict would not have been unreasonable, we cannot say that the verdict in this regard is against the weight of the evidence.
Defendant's claims that County Court erred in denying his motion to suppress his statements made to law enforcement — based upon either his alleged unlawful detention or his purported invocation of the right to remain silent — are similarly unpersuasive. We do, however, agree that County Court erred in denying defendant's pretrial motion to sever the weapon charge from the remaining counts of the indictment. "Severance of counts contained in a single indictment should be granted when a defendant shows that the counts were not joinable under the statutory criteria" (People v Santiago, 190 AD3d 502, 502 [2021] [citations omitted]). As relevant here, CPL 200.20 provides that offenses are joinable when, "[e]ven though based upon different criminal transactions, such offenses, or the criminal transactions underlying them, are of such nature that either proof of the first offense would be material and admissible as evidence in chief upon a trial of the second, or proof of the second would be material and admissible as evidence in chief upon a trial of the first" (CPL 200.20 [2] [b]; see People v Raucci, 109 AD3d 109, 117 [2013], lv denied 22 NY3d 1158 [2014]; People v Cherry, 46 AD3d 1234, 1236 [2007], lv denied 10 NY3d 839 [2008]). "[E]vidence may be deemed material and admissible within the meaning of CPL 200.20 (2) (b) if such proof would be admissible under any of the recognized Molineux exceptions" (People v Raucci, 109 AD3d at 117; see People v McCloud, 121 AD3d 1286, 1288-1289 [2014], lv denied 25 NY3d 1167 [2015]; People v Rodney, 79 AD3d 1363, 1363-1364 [2010], lv denied 19 NY3d 1105 [2012]). "On a motion for severance, the court must sever counts [that] are not properly joined" (People v Gadsden, 139 AD2d 925, 925-926 [1988] [citations omitted]; accord People v Communiello, 180 AD2d 809, 810 [1992]).
The People, in opposing defendant's motion to sever, argued — in sum and substance — that the proof underlying the assault and menacing charges is material and admissible as evidence-in-chief as to the criminal possession of a weapon charge because the proof falls within certain Molineux exceptions, specifically, that it provides necessary background information regarding the actions undertaken by the police and completes the narrative as to how defendant's residence came to be searched.[FN3] The People also asserted — without elaboration — that the proof underlying the weapon charge is material and admissible as evidence-in-chief as to the assault and menacing charges. Citing the victim's grand jury testimony, wherein the victim stated that, during the course of the assault and menacing, defendant [*5]proclaimed that he was a "shooter," the concurrence/dissent posits that such proof also demonstrates defendant's familiarity with and access to weapons — notwithstanding the fact that the victim's description of the weapon displayed during the assault did not match the description of the weapon recovered from defendant's residence.
To determine whether these offenses were properly joined, we must ascertain whether such evidence falls within any of the proffered Molineux exceptions and, further, whether the probative value of such evidence "clearly outweighs any possible prejudice" (People v Nicholas, 130 AD3d 1314, 1316 [2015]; see generally People v Molineux, 168 NY 264 [1901].[FN4] Even assuming, without deciding, that proof of the assault and menacing incident falls within the ambit of Molineux in that it provides necessary background information and/or completes the narrative, we find that the probative value of such evidence — as anything other than propensity evidence — to be de minimus. Notably, County Court ruled prior to trial that the search leading to the discovery of the gun at defendant's residence, which, in turn, formed the basis for the weapon charge, was supported by probable cause, thereby obviating the need for the People to establish the legality of the search at trial. Nor does this evidence, or any evidence of the assault and menacing incident, provide proof of some "material issue, other than . . . defendant's criminal propensity" relative to the weapon charge (People v Cass, 18 NY3d 553, 560 [2012]). More to the point, by refusing to sever the assault and menacing charges from the weapon charge, County Court permitted highly prejudicial evidence to be placed before the jury. Proof that a handgun was recovered from defendant's residence could lend credence to the victim's claim that a handgun — albeit a different one — was displayed during the course of the assault and menacing. Similarly, if the jury credited the victim's grand jury testimony relative to defendant displaying a weapon during her encounter with him, the jury could be more likely to believe that the handgun recovered from defendant's residence did indeed belong to him. In short, as the proffered evidence was not relevant to a material issue in the case and was highly prejudicial to defendant, it was not admissible under Molineux and, therefore, could not properly serve as a basis for joinder (see generally People v Raucci, 109 AD3d at 117; compare People v McCloud, 121 AD3d at 1288-1289). As such, County Court erred in denying the motion to sever.
"Although harmless error analysis may be applied to a misjoinder of offenses, it is impossible to conclude that defendant was not prejudiced by the [improper] joinder [here]" (People v Gadsden, 139 AD2d at 926 [internal citation omitted]). Proof of defendant's guilt was not overwhelming, and, in any event, "[t]here is an obvious danger" that the evidence of a second firearm tainted the jury's assessment of the [*6]trial evidence as to the respective charges by portraying defendant as an individual with a propensity for engaging in weapon-related criminal activity (id. at 926; see e.g. People v Hall, 120 AD3d 588, 589 [2014], lv denied 27 NY3d 965 [2016]; People v Daniels, 216 AD2d 639, 640 [1995]; People v Caraballo, 162 AD2d 214, 215 [1990]; People v Gadsden, 139 AD2d at 926).[FN5] Accordingly, the judgment of conviction must be reversed, and this matter must be remitted for separate trials relative to the weapon charge and the assault and menacing charges.
In light of the need for remittal, we must address other fundamental issues raised by defendant upon appeal, including his argument that his 6th Amendment right to confrontation was violated when County Court permitted the People to read the victim's grand jury testimony into evidence. A criminal defendant has both a federal and state constitutional right to confront the witnesses against him or her (see US Const Amend VI; NY Const, art I, § 6). "Given this important right, an unavailable witness's grand jury testimony . . . generally may not be admitted at trial on the People's direct case. However, where it has been shown that the defendant procured the witness's unavailability through violence, threats or chicanery, the defendant may not assert either the constitutional right of confrontation or the evidentiary rules against the admission of hearsay in order to prevent the admission of the witness's out-of-court declarations, including the witness's grand jury testimony" (People v Smart, 23 NY3d 213, 220 [2014] [internal quotation marks and citations omitted]; see People v Dubarry, 25 NY3d 161, 174 [2015]; People v Bernazard, 188 AD3d 1239, 1241 [2020], lv denied 36 NY3d 1095 [2021]).
"Recognizing the surreptitious nature of witness tampering and that a defendant engaging in such conduct will rarely do so openly, resorting instead to subterfuge, the court can rely on and the [People] can use circumstantial evidence in making the requisite determination" (People v Bernazard, 188 AD3d at 1241 [internal quotation marks and citations omitted]). That said, "the People [must] present legally sufficient evidence of circumstances and events from which a court may properly infer that the defendant, or those at [the] defendant's direction or acting with [the] defendant's knowing acquiescence, threatened the witness" (People v Dubarry, 25 NY3d at 177; see People v Wilkinson, 185 AD3d 734, 736 [2020], lv denied 36 NY3d 1101 [2021]). It is not enough that "the defendant expressed hope that the witness would not testify against him or her at trial. Rather, the People must demonstrate by clear and convincing evidence that the defendant engaged in misconduct aimed at least in part at preventing the witness from testifying and that those misdeeds were a significant cause of the witness's decision not to testify" (People v Smart, 23 NY3d at 220; see People v Ellis, 198 AD3d 674, 675 [2021]; People v Burgess, 198 [*7]AD3d 808, 809 [2021]).
At the Sirois hearing, the People established that the victim initially cooperated with law enforcement, provided a sworn statement and testified before the grand jury. The People also demonstrated that the victim stopped showing up for work approximately one month before the trial and, during the week prior to trial, began calling family members from blocked or unrelated phone numbers and told her mother that she felt threatened and did not want to be "traced." The record further reflects that, despite diligent efforts, the victim could not be located at the time of trial.
The victim's mother testified and recounted conversations that she had with the victim regarding the alleged threats. According to the victim's mother, approximately two weeks before trial, a woman named "Meesha" approached the victim in a nail salon and "aggressive[ly]" inquired, "what's up with you and Chris?"; when the victim asked, "who is Chris?", the unidentified woman said, "Brisk." The victim's mother also testified that the victim saw two public Facebook posts — one by an unidentified individual (posted at the time of incident) asking what had happened on Henry Johnson Boulevard and the other by Daniels, stating that she did not want to say too much about the case because she did not "want the police knocking down her door." According to the victim's mother, the victim was "addressed" on Facebook by an unknown person asking the victim to meet "to discuss the case," and the victim overheard a three-way phone call — initiated by defendant, facilitated by Daniels and made to the victim's boyfriend — wherein defendant told the victim via speaker to "do what's right," in response to which the victim purportedly asked defendant to repeat himself. Based upon the foregoing, the victim's mother testified, the victim was "scared for her life."
Although the proof adduced certainly established that the victim felt threatened and did not wish to testify, such proof fell short of demonstrating, by clear and convincing evidence, that defendant — or someone acting at his behest — orchestrated the victim's unavailability for trial. None of the Facebook posts contained any threatening language, and the query posed by "Meesha" at the nail salon did not constitute a threat.[FN6] With respect to the phone call to the victim's boyfriend, a recording of the three-way conversation, which was admitted into evidence at the hearing, reflects that defendant told Daniels to contact the victim's boyfriend and ask if he was "going to do the right thing." Once Daniels made the call, defendant stated, "yo bro, do the right thing." Defendant's comments, however, did not reference either the victim or the underlying incident, and defendant's tone/demeanor can best be described as frustrated or exasperated, as he repeatedly stated that he could not hear the victim's boyfriend and asked Daniels if the victim's boyfriend could hear him. Finally, and contrary to the testimony [*8]offered by the victim's mother, the victim cannot be heard on the phone call at all — much less engaging in conversation with defendant.
Although County Court deemed defendant's comments to the victim's boyfriend to be "a direct threat" against the victim, we are not persuaded that the record contains clear and convincing evidence to support the finding that defendant — or others acting on his behalf — were a "significant cause" (People v Smart, 23 NY3d at 220) of the victim's decision not to testify (compare People v Bernazard, 188 AD3d at 1241-1242; People v Wilkinson, 185 AD3d at 736; People v McKenny, 177 AD3d 563, 564 [2019], lv denied 34 NY3d 1130 [2020]; People v Zafor, 161 AD3d 1017, 1017 [2018], lv denied 31 NY3d 1155 [2018]; People v Harris, 159 AD3d 538, 539 [2018], lv denied 31 NY3d 1148 [2018]). Accordingly, County Court should not have permitted the People to read the victim's grand jury testimony into evidence on their direct case. As noted previously, proof of defendant's guilt was not overwhelming, and we are unable to conclude that such error "was harmless beyond a reasonable doubt" (People v Dubarry, 25 NY3d at 177 [internal quotation marks and citations omitted]).
In light of our remittal, we also deem it appropriate to briefly address certain of County Court's Molineux rulings. Over defense counsel's objection, the People elicited proof that defendant was found to be in possession of a small quantity of marihuana at the time of his arrest. This proof was not probative of any material issue relative to the crimes for which defendant stood trial and did not fall within any of the recognized Molineux exceptions (see generally People v Gaylord, 194 AD3d 1189, 1192-1193 [2021], lv denied 37 NY3d 972 [2021]). Similarly, although defendant's disclosure — shortly before the incident — to a member of the Albany Police Department's Neighborhood Engagement Unit that he resided at 204 Clinton Avenue was probative as to the possession element of the weapon offense, the People exceeded the scope of County Court's Molineux ruling when they explored the manner in which defendant became involved in that program and elicited testimony — over defense counsel's objection — that defendant was referred to that program by the department's "Crime Analysis Center."
The balance of defendant's Molineux objections are unpreserved for our review. Were we to address such objections, we would find that the numerous references to defendant's prior involvement with law enforcement — as contained in the redacted video recording of his interview with the police — clearly portrayed defendant as someone with a propensity for criminal activity.[FN7] Such references — to the extent that they were of any probative value — were highly prejudicial and should not have been placed before the jury.[FN8]
As a final matter, on the record before us, we agree that County Court erred in denying defendant's request to charge attempted assault in the third degree as a lesser [*9]included offense of assault in the third degree (see generally Matter of Kristie II., 252 AD2d 807, 807-808 [1998]), as the jury reasonably could have concluded that defendant intended to cause physical injury to the victim but did not actually do so (compare People v Almonte, 33 NY3d 1083, 1084 [2019]). As we are remitting this matter for new trials, we need not address defendant's arguments relative to the propriety of the People's summation or his claim that he was denied the effective assistance of counsel. Defendant's remaining contentions, to the extent not specifically addressed, have been examined and found to be lacking in merit.
Aarons and Pritzker, JJ., concur.
Clark, J. (concurring in part and dissenting in part).
We disagree with the majority's determination that the charges of menacing in the second degree and assault in the third degree were not joinable with the charge of criminal possession of a weapon in the second degree and that County Court therefore erred in denying defendant's motion to sever the weapon possession charge from the remainder of the indictment. As such, we respectfully dissent from that part of the majority's decision.
Pursuant to CPL 200.20 (2) (b), "offenses are 'joinable' when . . .[, e]ven though based upon different criminal transactions, such offenses, or the criminal transactions underlying them, are of such nature that either proof of the first offense would be material and admissible as evidence in chief upon a trial of the second, or proof of the second would be material and admissible as evidence in chief upon a trial of the first." As the majority notes, "evidence may be deemed material and admissible within the meaning of CPL 200.20 (2) (b) if such proof would be admissible under any of the recognized Molineux exceptions" (People v Raucci, 109 AD3d 109, 117 [2013], lv denied 22 NY3d 1158 [2014]; accord People v Piznarski, 113 AD3d 166, 180 [2013], lv denied 23 NY3d 1041 [2014]). If the offenses were properly joined under CPL 200.20 (2) (b), County Court lacks the statutory authority to sever (see People v Bongarzone, 69 NY2d 892, 895 [1987]; People v Abdullah, 133 AD3d 925, 928 [2015], lv denied 27 NY3d 990 [2016]; People v Cherry, 46 AD3d 1234, 1236 [2007], lv denied 10 NY3d 839 [2008]).
Here, the victim's report of the assault and menacing incident served as the basis for the police seeking and obtaining a warrant to search defendant's residence mere hours after the incident, which ultimately led to the discovery of the loaded handgun inside the Ugg boot of defendant's girlfriend. In the hours between the assault and menacing incident and the execution of the search warrant, defendant was arrested following a traffic stop. A subsequent search of defendant's person and the vehicle did not reveal a weapon and, when interviewed by the police (before the discovery of the loaded handgun at his residence), defendant made several statements acknowledging his encounter with the victim, [*10]but denying that he had engaged in conduct that could have led the victim to believe that he had a gun. In our view, given such circumstances, proof of the assault and menacing incident provides necessary background information regarding police action and completes the narrative of events leading up to the discovery of the weapon in defendant's possession (see generally People v Morales, 189 AD3d 1464, 1467 [2020]). Moreover, the victim testified before the grand jury that, during the assault and menacing incident, defendant shouted that he was a "shooter," and, although the victim's description of the handgun displayed during the incident did not precisely match the handgun recovered from defendant's residence, defendant's possession of the handgun demonstrated his familiarity with and access to a weapon (see People v Wells, 141 AD3d 1013, 1016 [2016], lvs denied 28 NY3d 1183, 1189 [2017]; People v Burnell, 89 AD3d 1118, 1121 [2011], lv denied 18 NY3d 922 [2012]). Thus, upon consideration of the foregoing, we find that the proof underlying the assault and menacing charges was material and admissible on the weapon possession charge and vice versa (see People v Griffith, 177 AD2d 386, 387 [1991], lv denied 79 NY2d 857 [1992]). Accordingly, as the offenses were joinable under CPL 200.20 (2) (b), County Court's denial of defendant's motion to sever the weapon possession charge from the remainder of the indictment must be upheld. Therefore, we would not reverse on this issue and remit for two separate trials.
Egan Jr., J.P., concurs.
ORDERED that the judgment is reversed, on the law, and matter remitted to the County Court of Albany County for new trials.



Footnotes

Footnote 1: There is no dispute that "[t]he home exception embodied in Penal Law § 265.03 (3), which provides that possession of a loaded firearm within one's own home generally does not constitute a violation of that subdivision, is inapplicable to defendant, given that he has been previously convicted of a crime" (People v McCoy, 169 AD3d 1260, 1262 n 1 [2019], lv denied 33 NY3d 1033 [2019]; see Penal Law § 265.02 [1]).

Footnote 2: Text messages exchanged between defendant and Daniels while he was in jail awaiting trial confirm that the two were involved in a romantic relationship.

Footnote 3: Our review of the record fails to disclose any other viable Molineux exception that would permit the introduction of such evidence in the manner urged by the People (compare People v McCloud, 121 AD3d at 1288-1289).

Footnote 4: Although we have not expressly addressed the balancing aspect of the Molineux test in other cases involving severance, we discern no reason why a different standard should apply simply because we are addressing the joinder of multiple offenses rather than the admissibility of evidence relative to a single crime. Indeed, eliminating the required Molineux balancing test from the joinder equation gives rise to the very problem presented here — namely, placing evidence before the jury, by way of joinder, without the trial court considering whether the probative value of such evidence outweighs its prejudicial effect.

Footnote 5: Indeed, evidence of such taint may be found in defendant's redacted interview with the police, which was published to the jury. During the second portion of this interview, DiGiuseppe is heard advising defendant that a gun had been recovered from 204 Clinton Avenue and stating, in reference to such discovery, "It also kinda doesn't make the other situation look too good neither [sic], you know what I mean? This girl's telling me that you're flashing a gun at her and lo and behold . . ."

Footnote 6: To the extent that text messages between defendant and Daniels reference an individual named "Miesh," the People did not establish that this was the same person who spoke with the victim at the nail salon.

Footnote 7: The statements made to defendant during this interview included, among other things, "You know these Miranda rights, you've heard them before, I know you have", as well as references to "other stuff that's happened" and why defendant had "been down [t]here before." Additional references were made to the fact that defendant had been "ROR'd" on other charges, one of which was "a little more serious" than the others.

Footnote 8: We note that the references to defendant's release status, other pending charges or prior involvement with law enforcement were not part of the People's pretrial Molineux proffer.